688 A.2d 211

**Frank K. LUTERAN, Appellant,**

v.

**LORAL FAIRCHILD CORP., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1996.

Filed Jan. 28, 1997.

366

Richard W. Rogers, Norristown, for appellant.

Steven R. Wall, Philadelphia, for appellee.

Before McEWEN, President Judge, and POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

Frank K. Luteran appeals from the order of the Court of Common Pleas of Montgomery County denying the removal of a compulsory nonsuit entered in favor of Loral Fairchild Corporation (Loral Fairchild). The lower court refused to remove the nonsuit because it believed that appellant failed to establish sufficient facts to sustain a cause of action for wrongful discharge. Specifically, the lower court determined that appellant was an at-will employee who was discharged properly, or, in the alternative, that he was discharged with just cause. In this appeal, appellant contends the following: (1) The employee handbook contained clear and unequivocal language which established that he could be fired for just cause only; (2) He offered sufficient evidence to show that additional consideration was given to Loral Fairchild to convert the at-will employment relationship to an implied contract; (3) If this Court determines that he offered sufficient evidence to establish that there was a contract precluding dismissal without just cause, Loral Fairchild had the burden of proving that he was fired for just cause; (4) Loral Fairchild failed to prove that he was fired for just cause. We affirm.

A motion for compulsory nonsuit allows the defendant to test the sufficiency of the plaintiff's evidence. *Froncioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977). A compulsory nonsuit can be granted only where it is clear that a cause of action has not been established and the plaintiff must be afforded the benefit of every fact and reasonable inference arising from the evidence, resolving any conflict in the evidence in favor of the plaintiff. *Zito v. Merit Outlet Stores*, 436 Pa.Super. 213, 647 A.2d 573 (1994). "A nonsuit is only appropriate if the facts are so clear that reasonable persons could not differ about the finality of their evidentiary significance." *Zito*, 647 A.2d at 574 (citation omitted).

Keeping the applicable standard in mind, we find that the relevant facts and procedural history are as follows: Appellant was employed by Weston Controls in 1977. Shortly after being hired, appellant discovered an employee handbook in his

desk. The handbook set forth details regarding the employer's numerous policies. Included in the handbook was the following provision:

> You may only be discharged for just cause. Some examples of just cause are excessive tardiness, absenteeism, insubordination, dishonesty, pilferage, incompetence, inefficiency, intoxication, use of drugs on the job, attempting to influence fellow employees to limit production and deliberately damaging company property or injuring a co-worker.

The employee handbook also contained a confidentiality agreement, a provision prohibiting employees from engaging in activities which competed with the employer's business, and a provision giving the employer title to all future inventions conceived or created by employees. Moreover, the first page of the handbook indicated that "We hope the guide serves you as a valuable reference for many years. Since this is loose-leaf, we will be able to add and replace sections to keep it current as changes occur—as they inevitably will." The handbook also indicated that it was designed to be used as an informational guideline regarding the employer's business, policies and procedures. In October, 1981, appellant received another employee handbook which was substantially the same as the handbook he had discovered in his desk.

In May, 1985, Weston Controls changed its name to Fairchild Weston Systems, Inc., and appellant was offered a newly-created position, which he accepted. In April, 1986, appellant was discharged. He was informed that he was discharged because the employer's "business was bad." Appellant's position was eliminated, and the employer was unable to find another position for him within the company.

On March 13, 1989, appellant filed a complaint against Fairchild Weston Systems, Inc. alleging wrongful discharge.[1] Specifically, he alleged that he was discharged without just cause in violation of the employment contract created by the employee handbook. Shortly after appellant filed suit, Fairchild Weston Systems, Inc. changed its name to Loral Fair-

---

1. Appellant also alleged fraudulent misrepresentation in his complaint. However, this issue is not before us on appeal.

child Corporation. Appellant amended his complaint to reflect this change.

Trial before a jury began on April 10, 1995. Following the closing of plaintiff's case, Loral Fairchild moved for the entry of a compulsory nonsuit on the basis that appellant was an at-will employee who was discharged properly, or, in the alternative, that he was discharged for just cause. The trial court agreed and granted Loral Fairchild's request for nonsuit. On April 24, 1995, appellant filed a post-trial motion to remove the nonsuit. The motion was denied and this appeal followed.

The presumption under Pennsylvania law is that all employment is at-will, and, therefore, an employee may be discharged for any reason or no reason. *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334 (1988). As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Id.* "The *sine qua non* of the presumption is that except in rare instances, discharge will not be reviewed in a judicial forum." *Scott*, 545 A.2d at 336. The burden of overcoming the presumption and proving that one is not employed at-will "rests squarely" with the employee. *Rutherfoord v. Presbyterian–University Hospital*, 417 Pa.Super. 316, 612 A.2d 500 (1992). In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception. *Robertson v. Atlantic Richfield Petroleum*, 371 Pa.Super. 49, 537 A.2d 814 (1987). "In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can show clearly that he and the employer intended to form a contract." *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 539 A.2d 865, 868 (1988) (citation omitted).

Appellant first seeks to rebut the presumption of at-will employment by demonstrating that the employee handbook created an implied contract whereby he would be dis-

charged for just cause only. Considering all of the evidence in the light most favorable to appellant, we disagree.

A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. We have held that it is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be bound legally. *Small v. Juniata College*, 452 Pa.Super. 410, 682 A.2d 350, 353 (1996) (citing *Ruzicki v. Catholic Cemeteries Association*, 416 Pa.Super. 37, 610 A.2d 495 (1992)). Moreover, we have held that in analyzing the employer's handbook, we should neither presume that the employer intended to be bound legally by distributing the handbook nor that the employee believed that the handbook was a legally binding instrument. *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986).

We find that the handbook in this case does not evidence an intent to create an implied contract whereby appellant could be discharged for objective just cause only. As in *Martin, supra*, the list of actions set forth in the handbook which call for discharge are nothing more than common sense enumerations of actions that any reasonable at-will employee would understand to call generally for discharge. *Martin*, 511 A.2d at 838. "The handbook is an aspirational statement by the employer listing actions that generally will not be tolerated; it serves as an information function." *Id.* In fact, the handbook specifically states that the reasons set forth for discharge are illustrative only and that the handbook was designed for informational purposes only.

In addition, we note that "it is the intention of the parties which is the ultimate guide, and, in order to ascertain the intention, the court may take into consideration the surrounding circumstances, the situation of the parties, and the

objects they apparently have in view...." *Id.* 511 A.2d at 839 (citation omitted). It is significant here that the employer unilaterally distributed the handbook and retained the right to alter the handbook unilaterally at-will. *See Martin, supra.* It is also significant that the handbook contains numerous sections covering a broad spectrum of work-related issues. *See Martin, supra.* This lends support to our conclusion that a reasonable employee would not understand the at-will presumption to have been overcome by the handbook provision at issue.

Appellant argues that we must find that the at-will presumption was overcome because the handbook expressly mentions the term "discharge for just cause." He also argues that if this Court determines that the provision of the handbook at issue is insufficient to overcome the at-will presumption, then no written handbook provision could ever overcome the presumption. We disagree.

It is well-settled that "to find that ... a handbook has legally binding contractual significance, the handbook or an oral representation about the handbook must in some way clearly state that it is to have such effect." *Martin,* 511 A.2d at 842. In *Martin,* we explicitly held that the use of the phrase "just cause" does not meet this requirement necessarily and does not automatically convert the handbook into a contract. "It would be purely fanciful to believe that the term 'just cause' was used in a technical sense to mean that the employer could discharge only for *objective* just cause." *Martin,* 511 A.2d at 840 (emphasis in original). When considered in the context of the other factors discussed previously, it seems clear that the employer did not intend to turn over to a trier-of-fact in a judicial setting the responsibility of defining 'just cause.' "The intention to do so must be stated with clarity." *Id.* Here, the use of the term "discharge for just cause" must be read to mean that the employer, in his subjective judgment, would decide what causes for discharge are "just." "To regard the use of the term 'just cause' as some sort of talisman which magically converts the at-will

employee into one who can never be discharged without objective just cause would defy reason." *Martin, supra.*[2]

 ▮▮▮▮▮ Since the handbook contained no language indicating that it was to be a legally binding contract, we cannot find that it was the intention of the employer to form a contract with its handbook. Further, we find that appellant could not reasonably conclude that the handbook legally committed the employer to discharge him for just cause only. The inclusion of the term "discharge for just cause" in the handbook does not alter our conclusion. Simply put, the intent of the parties is not clear enough from the evidence to allow any court to imply a contract here. If such language were present, then this Court would be permitted to find that the handbook altered the at-will relationship. Accordingly, the trial court did not err in granting nonsuit on this basis.[3]

**2.** Appellant argues that the principles enunciated in *Martin* are inapplicable to this case because *Martin* is distinguishable on two bases. First, in *Martin*, the provision at issue discussed disciplining employees but did not discuss discharging them as is the case here. Second, in *Martin*, the handbook allegedly modified the status of employees who were hired initially at-will. Here, however, appellant contends that the handbook was in effect from the moment he was hired. We find that these distinctions are of little consequence since this Court has applied previously the principles enunciated in *Martin* to the situations at issue in this case. *See Scott, supra* (applying *Martin* to conclude that the handbook given to employee when she commenced employment was insufficient to overcome the at-will presumption); *DiBonaventura, supra* (applying *Martin* to conclude that employee was not discharged wrongfully where he was an at-will employee).

**3.** We note that even if we were to find that appellant could conclude reasonably that the employer intended to alter the at-will relationship there is no evidence which establishes that there was a valid offer and acceptance with the distribution of the handbook. *See Martin, supra* (once it is determined that the handbook created an implied contract altering the at-will relationship, it must be shown that there was a valid offer and acceptance). The evidence reveals that appellant found the first handbook in his desk and that the second handbook was given to him. However, appellant failed to discuss any of the circumstances surrounding his receipt of the second handbook, including precisely who gave it to him.

 It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. It is not sufficient to show that the employer had a policy. It must be shown that it offered the policy as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain

Appellant next seeks to rebut the presumption of at-will employment by demonstrating that he offered sufficient additional consideration. To support this contention, appellant argues that he offered sufficient additional consideration when he transferred to his new position in May, 1985, agreed to the employer's confidentiality clause, agreed to the employer's non-competition clause, and agreed to assign to the employer the title to all of his future inventions. We disagree.

Pennsylvania courts have recognized that even contracts for an indefinite duration can be brought out of the at-will presumption by a showing that the employee gave his employer additional consideration *other* than the services for which he was hired.... When sufficient additional consideration is present, courts infer that the parties *intended* that the contract will not be terminable at-will.... The presence of sufficient additional consideration indicates that the employee has come to the employment relation with bargaining strength greater than that of the usual employee.

A court will find additional consideration when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform.

*Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 315 (1986) (citations omitted) (emphasis in original). "When sufficient additional consideration is present, an em-

circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.
*Morosetti v. Louisiana Land and Exploration Company,* 522 Pa. 492, 564 A.2d 151, 152 (1989) (citation omitted).

Here, the only evidence offered by appellant was that there was a "discharge for cause" policy in the handbook. There is no evidence that the first handbook was given to him as inducement for employment (indeed he testified that he didn't read the handbook until *after* he had been hired) or that the company intended to offer the second handbook to appellant as a binding contract modifying the at-will relationship. *See Morosetti, supra.* Accordingly, we find that the trial court did not err in granting nonsuit.

ployee should not be subject to discharge without just cause." *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571, 580 (1986).

We find meritless appellant's contention that additional consideration was given when he transferred to his new position in May, 1985. During trial, appellant testified that after he transferred to his new position, his compensation remained unchanged. N.T. 4/10/1995 p. 143. In fact, appellant testified that he considered the transfer to be a promotion. N.T. 4/10/1995 p. 143. There is no testimony that appellant's new position increased his workload, increased his work hours or involved burdensome travel. In fact, there is no evidence that appellant "gave up" something of value or suffered any substantial hardship when he accepted the transfer. *See Stumpp v. Stroudsburg Municipal Authority,* 540 Pa. 391, 658 A.2d 333 (1995). Moreover, there is no evidence that by accepting the transfer appellant afforded Loral Fairchild a substantial benefit other than the services which he was hired to perform. *Id.*

Finally, we find meritless appellant's contention that additional consideration was given when he agreed to a confidentiality clause, noncompetition clause, and a clause giving the employer the right to any inventions appellant made or conceived. In *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 545 A.2d 334 (1988), we examined an appellant's claim that there was additional consideration present because she gave the employer the divulge the employer's secrets. We explicitly held that these "privileges and rights sacrificed by appellant were so minimal that in no sense can we say that the agreement rose to the level of 'additional consideration.'" *Scott,* 545 A.2d at 339. Such is the case here. There is no indication that appellant brought any abilities to the job, aside from those services for which he was compensated, which were beneficial to the employer, or that he sacrificed anything tangible beyond that for which he was paid. "The at-will presumption is not overcome every time a worker sacrifices theoretical rights and privileges." *Id.* "The detriments alleged are commensurate with those incurred by all manner of salaried professionals." *Veno,* 515 A.2d at 580. Accordingly,

we find that appellant has failed to demonstrate that there was additional sufficient consideration to overcome the at-will presumption.[4]

For all of the foregoing reasons, we find that the trial court did not err in determining that appellant was an at-will employee, and, therefore, the court did not err in denying appellant's motion to remove the compulsory nonsuit entered in favor of Laurel Fairchild.[5]

Order affirmed.

4. Appellant argues that we must find that there was sufficient additional consideration under the theory of equitable estoppel. We disagree. In *Stumpp*, we explicitly rejected the argument that equitable estoppel is an exception to the at-will rule. We stated that "the doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise. Thus, the issue of whether an employee detrimentally relied on any promises of the employer is simply not relevant in determining whether the employee [could be discharged]." *Stumpp*, 658 A.2d at 336 (citation omitted). Appellant's contention to the contrary is meritless.

5. In light of our foregoing decision, it is unnecessary for us to review appellant's remaining contentions.