Michael RAPAGNANI a/k/a Michael Rapp a/k/a Trading As Rappcity, Appellant,

v.

The JUDAS COMPANY and Magic Productions and Tap Productions and Landmark Entertainment Group and Niko Associates, Inc. And Allen Spivak and Larry Magid, Individually and Trading As Electric Factory Concerts, Inc.

Superior Court of Pennsylvania.

Argued May 11, 1999.

Filed Aug. 13, 1999.

---

Ronald D. Ashby, Media, for appellant.

Susan A. Yohe, Pittsburgh, for appellees.

Before FORD ELLIOTT, MONTEMURO,* and TAMILIA, JJ.

FORD ELLIOTT, J.:

¶ 1 In this appeal, we are asked to decide whether the trial court erred when it granted summary judgment to all defendants/appellees. Finding no error, we affirm. The factual and procedural history, taken from the trial court's opinion and supported by the record, follows:

[Appellant] Michael Rapagnani was hired to be a musical director for a non-first class touring production of the Andrew Lloyd Webber musical 'Jesus Christ Superstar.' He worked for eight months before being terminated with three weeks notice. [Appellant] alleged two claims of improper termination and a claim of defamation against eight Defendants. [Appellant] sued his employer the Judas Company and the three joint venturers who made up Judas, Landmark Entertainment, Magic Productions and Tap Productions. He also sued Niko Associates, Inc., the entity who provided general management services for the tour, and Allen Spivak and Larry Magid, individually and trading as Electric Factory Concerts, Inc., who were listed as producers in the Playbills in various cities.

Trial court opinion, 8/3/98 at 1–2. Following the close of discovery, appellees moved for summary judgment. The motion was granted July 9, 1998, and this timely appeal followed.

¶ 2 Appellant raises one issue: whether "the lower court erred in granting a motion for summary judgment to all appellees by concluding there was no issue of fact,

only matters of law which could be decided by the lower court?" (Appellant's brief at 3.) The gravamen of appellant's argument is that there exists a genuine issue of fact as to whether he was an at-will employee whose employment could be terminated before the tour ended without a showing of cause. With the factual and procedural posture of the case in mind, we turn to the law relevant to summary judgment.

¶ 3 When an appellate court reviews the grant of a motion for summary judgment, our scope of review is well settled; the trial court will be overturned only if there has been an error of law or clear abuse of discretion. *First Wisconsin Trust Co. v. Strausser*, 439 Pa.Super. 192, 653 A.2d 688, 691 (1995) (citations omitted). Our review of the record is, however, plenary. *Keselyak v. Reach All, Inc.*, 443 Pa.Super. 71, 660 A.2d 1350, 1352 (1995).

¶ 4 After completion of discovery relevant to the motion, a party may move for summary judgment when "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.Civ.P. 1035.2(2). "The moving party has the burden of proving the nonexistence of any genuine issue of material fact. The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, , 702 A.2d 1038, 1040 (1997) (citation omitted).

¶ 5 Nevertheless, the adverse party to the summary judgment motion must not rely on the allegations or denials of the pleadings. Rather, the adverse party must identify "evidence in the record establishing the facts essential to the cause of action or defense which the motion cites

*. Retired Justice assigned to Superior Court.

as not having been produced." Pa. R.Civ.P. 1035.3(a)(2). When summary judgment is granted under Rule 1035.2(2), it is because "the record contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to a jury." Pa.R.Civ.P. 1035.2(2), Note. In this case, appellant bore the burden of overcoming the firmly entrenched presumption that he was an at-will employee who could be discharged for any reason or no reason at all. *Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 688 A.2d 211, 214 (1997) (citation omitted), *appeal denied*, 549 Pa. 717, 701 A.2d 578 (1997). The trial court concluded that appellant presented insufficient evidence to overcome the presumption that he was an at-will employee; therefore, he could not make out a *prima facie* cause of action for breach of contract based on a claim that he could only be terminated for cause.[1] (Trial court opinion, 8/3/98 at 2–3.)

¶ 6 "As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Luteran*, 688 A.2d at 214 (citation omitted). " 'The *sine qua non* of the presumption is that except in rare instances, discharge will not be reviewed in a judicial forum.' " *Id.*, quoting *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 336 (1988).

> In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception.

*Luteran*, 688 A.2d at 214 (citation omitted). In this case, appellant attempted to rebut the presumption of at-will employment by showing that the agreement provided for employment for a definite duration and specified that he would be discharged for just cause only, and also by showing that he provided appellees with sufficient additional consideration. (Appellant's complaint at 18–21.) We address these arguments in turn.

¶ 7 The parties' agreement consisted of an express written contract in three parts: 1) the "Musician's Individual Employment Contract" ("the contract"); 2) a rider to this contract ("the rider"); and 3) "Pamphlet B," containing the collective bargaining agreement between the American Federation of Musicians of the United States and Canada and the League of American Theaters and Producers ("Pamphlet B"). (S.R.R. at 8b–55b.) Appellant's complaint alleged a breach of paragraphs 4(a), 4(b), 4(d), 4(e), and 4(f) of the rider. Those paragraphs provide:

> 4. The musician's duties shall include the following:
>
>   a. Conducting and playing for all cast rehearsals during pre-production and *the run of the tour*, including all put in and understudy rehearsals.
>
>   b. Conducting and playing for all orchestra rehearsals during pre-production and *the run of the tour*, including all put in and local orchestra rehearsals. Local orchestra rehearsals after pre-production shall be four hours in length.
>
>   . . . .
>
>   d. Conducting and playing all promotional and advertising events for all mediums, as well as the creation, implementation and any adjustments of all click tracks used for the performance *throughout the tour*.
>
>   e. To create new orchestra parts as needed and to maintain all orchestra parts *throughout the tour*.

---

1. Appellant also brought a defamation claim against which the trial court entered summary judgment; however, the correctness of the court's ruling as to that claim was not raised on appeal.

f. To create and maintain all midi designs and synthesizer programs and to adjust if needed *during the run of the tour*.

S.R.R. at 9b (emphasis added). Appellant argues that the highlighted language supports his claim that the contract provided for employment for a definite term, the run of the tour, and therefore he could only be terminated for just cause.

¶ 8 "Where an employment arrangement does not contain a definite term, it will be presumed that the employment at-will rule applies." *Marsh v. Boyle*, 366 Pa.Super. 1, 530 A.2d 491, 493 (1987) (citation omitted). " '[G]enerally an employment contract for a broad, unspecified duration does not overcome the presumption of at will employment.... Definiteness is required....' " *Id.*, quoting *Murphy v. Publicker Industries, Inc.*, 357 Pa.Super. 409, 516 A.2d 47, 51–52 (1986) (other citations omitted). The *Marsh* court found that an employer's assurance that Marsh would be working as publisher for at least two years was not sufficiently definite to rebut the at-will employment presumption. *Marsh*, 530 A.2d at 494. *See also Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 312 (1986) (a contract for "permanent employment" or to work on a long-term project is insufficient to overcome the presumption of at-will employment), *disapproved on other grounds as stated in Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 360 (1993).

¶ 9 Appellant argues, however, that the entertainment industry is different from most industries because of the inherent uncertainty in the duration of any theatrical undertaking. (Appellant's brief at 10.) While this may be true, it does not negate the fact that none of the three documents that form the basis of the parties' agreement in this case explicitly discusses the anticipated duration of appellant's employment; the sub-paragraphs cited by appellant occur in a paragraph delineating appellant's duties. We agree with appellees that references to "the run of the tour" in a paragraph describing an employee's duties are far too vague and indefinite to form a contract for a definite duration, thus overcoming the presumption of at-will employment. *See DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 539 A.2d 865, 867 (1988) (" '[M]odification of an "at will" relationship to one that can never be severed without "just cause" is such a substantial modification that a very clear statement of an intention to so modify is required[ ]"), quoting *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 578 (1986), *appeal denied*, 532 Pa. 665, 616 A.2d 986 (1992). "Courts are highly reluctant to make definite that which the parties themselves failed to do." *Darlington*, 504 A.2d at 312.

¶ 10 Furthermore, the only paragraph in the parties' agreement addressing termination of the employment relationship is silent as to the basis for termination: it indicates neither that termination may only be for cause nor that employment is guaranteed for the duration of the tour absent cause. Rather, Pamphlet B provides only that a musician may be terminated at any time during his first twenty-one days of employment provided he is given one week's wages plus transportation costs; and that after the twenty-one-day period, either the company or the musician may terminate employment on three weeks' notice. (Pamphlet B, ¶ 14A, S.R.R. at 27b.) This paragraph supports rather than rebuts the presumption that appellant was an at-will employee.

¶ 11 Appellant also claims, however, that the parties' intention to create an employment contract that could only be terminated for cause can be gleaned from the surrounding circumstances. In particular, appellant claims that he gave additional consideration in the form of giving up his studio in California to go "on the

road" with the touring company.[2]

[A] court will find 'additional consideration' when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. 'If the circumstances are such that a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract, this is a factor of great weight in inducing a holding that the parties agreed upon a specific period.' 3 A. Corbin, **Corbin on Contracts** § 684 (1960).

*Darlington*, 504 A.2d at 315. In *Darlington*, the court found that Darlington did not render additional consideration sufficient to overcome the at-will presumption by foregoing an opportunity for advancement with his former employer to take a position with General Electric, which he held for fifteen years. *Id.* Likewise, the court found that neither the heavy travel schedule nor the additional teaching duties constituted additional consideration for a professional engineer such as Darlington. *Id.* As a result, the court affirmed the trial court's entry of j.n.o.v. in favor of G.E.

■ ¶ 12 While we recognize that Darlington retained his employment with G.E. for fifteen years while appellant retained his employment for only eight months, we cannot conclude that appellant gave additional consideration to accept the music director's job. By its very nature, that job required appellant to go on the road, thus leaving behind his home and his former employment. As appellant candidly admits in his brief, "anyone who goes on a road tour clearly has to leave their [sic] residence." (Appellant's brief at 14.) Furthermore, as appellant also candidly admits, "In this case there was no guarantee that the show, 'Jesus Christ Superstar', would even open in Baltimore[,]" much less run for any definite period of time. (*Id.* at 10.) Thus, appellant knew that by allegedly closing his studio to join the tour, he was merely taking the sort of risk associated with being employed by a touring company in the entertainment industry, a risk for which appellant was compensated.

■ ¶ 13 Nevertheless, appellant argues that the question whether he offered sufficient additional consideration to rebut the presumption of at-will employment is a question of fact for the jury, not a question of law for the judge. (Appellant's brief at 13.) While in the usual case, " '[t]he court must allow the jury to consider [the employee's] alleged 'additional consideration' as well as all the circumstances surrounding the agreement[,]" *Marsh*, 530 A.2d at 494–495, quoting *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1202 (1987), *appeal denied*, 517 Pa. 607, 536 A.2d 1331 (1987), in this case, we disagree. "It is elementary that [before a case should proceed to trial,] the employee must first present averments which would raise a legally sufficient factual dispute." *Scott*, 545 A.2d at 340. As the *Scott* court continued, "Recent decisions have held it proper in similar instances for *the court* to examine the factual averments and decide that the surrounding circumstances and additional consideration do not sufficiently manifest an intent to overcome the at-will presumption." *Id.*, citing, *inter alia, Dar-*

---

2. In his brief, appellant also claims that he testified that he played additional instruments and that he intended to work on an additional project during the tour. This testimony appeared in appellant's deposition, which is not in the record certified to this court and was not available to the trial court, but which was included in appellant's reproduced record. Appellees therefore moved to have appellant's reproduced record stricken. (Appellees' ap-

plication to strike appellant's reproduced record, 11/9/98.) This court denied the motion to strike but ordered appellant to delete pages 9, 10, and 11 from the reproduced record, and to delete any references to these pages from his brief. (Per Curiam Order, filed December 17, 1998.) While we have received an amended reproduced record, appellant's brief still contains references to the stricken pages. We will not address these arguments.

*lington, supra* and *Veno, supra* (emphasis in original).

¶ 14 In this case, "[t]he burden of overcoming the presumption and proving that one is not employed at-will 'rest[ed] squarely' with" appellant. *Luteran*, 688 A.2d at 214 (citations omitted). Furthermore, as we have already observed, one opposing a motion for summary judgment may not rest on the pleadings, but must identify evidence in the record establishing the facts essential to the cause of action which the motion cites as not having been produced. Pa.R.Civ.P. 1035.3(a)(2). Appellant, however, has failed to identify *any* evidence supporting his claim that he sold his studio, much less that he did so in order to take the music director's job or that he has suffered harm as a result. In response to appellees' motion for summary judgment, appellant filed a response to which he attached a letter supporting his defamation claim, his notice of dismissal letter, and a Playbill for the show, indicating the members of the staff. None of this evidence indicates that appellant provided additional consideration.

¶ 15 We therefore find this case distinguishable from *Marsh, supra,* in which Marsh resigned his position with a newspaper, moved from one city to another, and placed his house on the market in order to accept a publisher's job, only to be terminated three months after he began employment. Marsh relied on assurances that he would be working as a publisher for at least two years. He was also returning to his hometown, to a stable job in a stable community. As a result, the *Marsh* court found that Marsh presented a question for the jury as to whether he had proffered sufficient additional consideration to rebut the at-will employment presumption. *Marsh*, 530 A.2d at 494–495. Unlike the situation in *Marsh*, appellant has presented no evidence, nor could he, that he was assured his employment would continue beyond eight months: by his own admission, the show might never have opened. The harm he suffered, if any, was therefore intrinsic to the nature of the job he took, and thus cannot be considered additional consideration. As a result, the trial court properly found as a matter of law that appellant failed to sustain his burden of rebutting the presumption of at-will employment.

¶ 16 Order granting summary judgment affirmed.