**Knepp v. Colonial Metals Company**

2

*Thomas R. Davies,* for plaintiff.

*James P. DeAngelo* and *Kandice J. Giurintano,* for defendant Colonial Metals Co. Inc.

*Frank L. Kollman,* for defendant.

PEREZOUS, *J.,* July 6, 2005—Presently before the court is the motion for summary judgment filed by the

defendant, Colonial Metals Company Inc. Defendant contends that it is entitled to summary judgment in this matter based on the fact that the plaintiff, Lewis E. Knepp, cannot, as a matter of law, establish that defendant discriminated against him and/or breached an employment contract between the parties. Specifically, defendant argues that plaintiff is unable to establish that he was constructively discharged, failed to produce any evidence of facts essential to his breach of contract and age/religious discrimination claims. Consequently, defendant avers that summary judgment is appropriate. For the following reasons, this court grants the defendant's motion.

This case arises out of plaintiff's employment relationship with defendant. Defendant is located in Columbia, Pennsylvania, and its business involves the smelting of scrap metal for the production of brass and bronze ingots. These ingots are then supplied to foundries and other end-users for use in making bronze and brass products such as plumbing fixtures, ship propellers and fluid valves. Plaintiff began working for defendant in September of 1978 as a laboratory assistant. Eventually, in 1990, he rose to the position of vice president of manufacturing before being reassigned to a national sales manager position, which he held for a brief time prior to his resignation in 2000.

As vice president of manufacturing, plaintiff was responsible for the oversight of defendant's manufacturing process. This included certifying that the ingots produced met certain specifications, and overseeing matters concerning the company's conformity with ISO 9000 standards.[1] By 2000, however, the changes in pouring

---

1. A quality control program begun by defendant in the mid-1990s, which nearly eliminated the production of out-of-spec ingots but had the side effect of decreasing defendant's profitability.

4

standards that accompanied the move to ISO 9000 proved to be too costly. Consequently, David Serls, then chairman of the board, directed the company to return to its pre-ISO 9000 pouring specifications. Plaintiff objected to this change and, as he states, refused to sign spec sheets indicating that the product was conforming when, in fact, it was not.[2] Plaintiff further urged his subordinates to do the same. Plaintiff felt that by signing these sheets, he was being asked to commit fraud. He says that being asked to lie, essentially, did not comport with his religious principles, and felt that he might go to jail if he signed inaccurate spec sheets.

As the defendant sets forth, its managers listened to plaintiff's concerns and explained that his religious values were not involved, and that the change in procedure was not a violation of any law or even a breach of industry practice or standards. After plaintiff refused to go along with the company's new procedures, plaintiff was reassigned to the position of national sales manager, where he would not have to deal directly with the manufacture of ingots. This newly-created position required plaintiff to travel consistently, report to the vice president of sales instead of the company president, and move into a smaller office. After approximately one month in this position, plaintiff resigned, contending that his new position was nothing more than an attempt by the company to get him to quit.

It is important to note that in 1999, plaintiff was offered a position with another company. This would have resulted in his separation from defendant. At this time,

---

2. ISO 9000 required documentation of the specifications and notice to the customer if defendant shipped a nonconforming product.

he was assured that the company would take care of him. As plaintiff argues in his brief, he declined this job offer from the company and continued to work for defendant in reliance upon these assurances.

Plaintiff commenced this action by filing a complaint on or about October 2, 2002. He alleged that defendant had violated the Pennsylvania Human Relations Act (PHRA) by discriminating against him on the basis of his age and religion. Additionally, he set forth a breach of contract claim against defendant, alleging that he had an employment contract with defendant that was breached when defendant constructively discharged him from the company. Defendant responded to the complaint by filing its answer and new matter on or about November 1, 2002. Plaintiff filed his response to the new matter on or about November 11, 2002. Following the close of the pleadings, the parties engaged in discovery. Defendant filed the present motion, along with a supporting brief, on or about March 24, 2005, which plaintiff responded to on or about April 22, 2005. Following plaintiff's response, defendant filed a reply brief on or about April 29, 2005.

It is well-settled in this Commonwealth that summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. Under the Pennsylvania Rules of Civil Procedure there are two situations in which a summary judgment motion is permissible:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party

may move for summary judgment in whole or in part as a matter of law:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(a).

Along with this standard, the rule also sets forth the requirements for a response to a motion for summary judgment:

"The adverse party may not rest upon the mere allegations or denials of the pleadings, but must file a response within 30 days after service of a motion identifying:

"(1) One or more issues of fact arising from the evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

"(2) Evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." *Id.*

It is important to note that the moving party has the burden of proving that no genuine issue of material fact exists. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 98, 674 A.2d 1038, 1041 (1996). In determining whether summary judgment is appropriate, the court must review the

evidentiary record in a light most favorable to the non-moving party, and that party will be given all reasonable inferences created by that evidence. *Bethlehem Steel Corp. v. MATX Inc.,* 703 A.2d 39, 41 (Pa. Super. 1997). In other words, any doubt must be resolved against the party seeking summary judgment, and it should only be granted in cases that are free and clear of doubt. *Davis v. Pennzoil Co.,* 438 Pa. 194, 202, 264 A.2d 597, 601 (1970).

Viewing the facts in a light most favorable to the plaintiff as the non-moving party, and resolving all doubts in his favor, summary judgment is appropriate. Even assuming that plaintiff can establish a constructive discharge through the conditions of employment imposed upon him as national sales manager, he has failed to produce evidence of facts essential to his breach of contract and discrimination claims. Accordingly, this court must grant defendant's motion.

Assuming, arguendo, that plaintiff was constructively discharged, he still failed to produce evidence of facts which would establish that an employment contract existed. As a result, he cannot make out a cause of action for a breach of that contract. To succeed on his breach of contract claim, plaintiff must establish that: (1) there was a contract; (2) defendant breached that contract; and (3) plaintiff suffered damages from that breach. *Matthews v. Unisource Worldwide Inc.,* 748 A.2d 219, 221 (Pa. Super. 2000). In order to proceed with the claim of constructive discharge from an alleged "lifetime" employment contract, moreover, plaintiff must first overcome the presumption that his employment was "at-will." *Gross v. Procter & Gamble Paper Products,* 866 A.2d 437, 441 (Pa. Super. 2005). An at-will employee

is one whose employment is not governed by a contract for a specific term and whose employment is terminable at the will of either the employer or the employee. *McNichols v. PennDOT,* 804 A.2d 1264, 1267 (Pa. Commw. 2002). Generally, at-will employees may be terminated at any time for any reason, or for no reason. *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 4, 693 A.2d 190, 191 (1997). In Pennsylvania, it is well established that employment is at-will and the employee serves at the pleasure of the employer. *Luteran v. Loral Fairchild Corp.,* 455 Pa. Super. 364, 370, 688 A.2d 211, 214 (1997).

It is the plaintiff's burden to overcome "the firmly entrenched presumption that he was an at-will employee." *Rapagnani v. Judas Co.,* 736 A.2d 666, 669 (Pa. Super. 1999). In order to rebut this presumption, plaintiff must establish one of the following: "(1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration to establish a contract; or (4) an applicable recognized public policy exception to the at-will doctrine." *Luteran,* 455 Pa. Super. at 370, 688 A.2d at 214. Pennsylvania courts have always interpreted the exceptions to the at-will employment doctrine narrowly to preserve the "extremely strong" at-will presumption. *McLaughlin v. Gastrointestinal Specialists Inc.,* 561 Pa. 307, 314, 750 A.2d 283, 287 (2000). When it is clear that a plaintiff cannot meet his burden, the defendant is entitled to summary judgment. See *Rapagnani,* 736 A.2d at 672.

The standard for establishing an employment agreement for a definite duration is an onerous one, requiring that the litigant show more than a contract for a broad,

unspecified duration. *Janis v. AMP Inc.,* 856 A.2d 140, 144 (Pa. Super. 2004). Pennsylvania courts are particularly skeptical of allegations that a party had an agreement for "permanent" or "lifetime" employment. See *Gruenwald v. Advanced Computer Applications Inc.,* 730 A.2d 1004, 1010 (Pa. Super. 1999). A promise of such employment is generally insufficient to rebut the presumption that the employment was at-will. *Id.*

In the present case, the plaintiff is unable to demonstrate that he had a contract of employment for a period of definite duration or, as he argues, a "lifetime" employment contract. Plaintiff's evidence consists of one statement by Phillip Serls, speaking for the company, that the plaintiff would be taken care of, other statements made by Phillip Serls that he wanted him to work there, and plaintiff's belief that he was performing important work indicating that he would remain with the company. This evidence is insufficient to overcome the presumption of at-will employment. The comments are normal examples of praise and concern that an employer would make to an employee who was doing a good job. However, they are insufficient to establish a contract for lifetime employment.

Plaintiff also argues in his brief that a lifetime employment contract existed because he declined another job offer in reliance upon the assurances made by Phillip Serls. As defendant points out, however, in plaintiff's responses to defendant's first set of interrogatories to plaintiff, he stated that after plaintiff advised Phillip Serls that he was not going to accept the job offer, plaintiff was assured by Serls that defendant would take care of things. According to plaintiff, then, it was not until after he declined the other job offer that he received the assur-

ances from Phillip Serls. Consequently, the assurance that plaintiff would be "taken care of" cannot be seen as creating a lifetime employment contract. Nevertheless, such an assurance, along with plaintiff's reliance, alone, is not sufficient to constitute additional consideration for the purposes of creating a lifetime employment contract. See *Marsh v. Boyle*, 366 Pa. Super. 1, 7, 530 A.2d 491, 494 (1987). This is the case especially when the parties' "agreement" fails to include any definite period of time, as in the present case. See *id.* As such, the plaintiff is unable to overcome the presumption that his employment was at-will, and cannot prevail on his breach of contract claim.

If this court still assumed, arguendo, that plaintiff was constructively discharged, he is still unable to prevail on his age or religious discrimination claims. The PHRA prohibits an employer from discharging any individual because of his age or religion. Courts have interpreted the PHRA in accordance with the standards of title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *Santarelli v. National Book Company Inc.*, 41 D.&C.4th 483, 489 (1999); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). To establish a prima facie case of discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the employer had a continued need for someone to perform the same work after he left. *Kroptavich v. Pennsylvania Power and Light Co.*, 795 A.2d 1048, 1058 (Pa. Super. 2002).

If a plaintiff succeeds in establishing a prima facie case, the burden of production then shifts to the defendant to

"articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-507 (1993). If such reasons are proffered, the plaintiff can avoid summary judgment by pointing to some evidence "from which a fact-finder could reasonably either disbelieve the employer's articulated legitimate reasons; or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). In other words, once the presumption raised by the prima facie case is rebutted, the plaintiff bears the ultimate burden of proving that he is a victim of intentional discrimination. Courts have held that a prima facie case of discrimination, combined with sufficient evidence for a reasonable fact-finder to reject the employer's nondiscriminatory explanation for its decision, is sufficient to sustain a finding of liability for intentional discrimination. *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 131, 143 (2000).

Assuming that the plaintiff can make out a prima facie case, he is unable to rebut defendant's legitimate, nondiscriminatory reason for his transfer. The evidence presented is insufficient to allow a reasonable fact-finder to reject the defendant's nondiscriminatory explanation for its decision. Defendant reassigned plaintiff because he refused to perform the duties associated with his prior position as vice president of manufacturing. This nondiscriminatory reason for the transfer is further supported by the plaintiff's own deposition testimony which states that the primary reason for his transfer to the position of national sales manager was his unwillingness to follow a company order. Such failures to follow company di-

rectives are valid reasons for a discharge, or a constructive discharge, as the case may be. See *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989).

It is also important to point out that the plaintiff worked for defendant for more than 20 years. Throughout that time period, plaintiff was a born-again Christian and never suffered any adverse employment actions based upon his faith or age. He appears to have received promotions and performed his duties as vice president of manufacturing for several years without his age or religion being an issue. It was not until plaintiff refused to follow the directives of the company that he was transferred. This new position, moreover, kept the plaintiff at the same rate of pay and allowed him to receive the same benefits as his prior position. This position was not created to discriminate against the older Christian gentleman at the company; it merely allowed the plaintiff to stay employed by the defendant while the defendant implemented its manufacturing decisions—decisions with which the plaintiff did not agree and refused to follow.

Furthermore, this court cannot agree with plaintiff that his refusal to follow the defendant's order to sign the spec sheets was a protected act based upon his religion's prohibition on lying. As the Seventh Circuit has held, a plaintiff's creed requiring scrupulous honesty in the scholarly pursuit of scientific knowledge did not qualify as a religious belief for title VII purposes. *Seshardi v. Kasraian,* 130 F.3d 798, 800-801. Similarly, the plaintiff's actions in the present scenario are not protected because his beliefs are too general in nature. As such, plaintiff's refusal to lie cannot be deemed a religious belief.

The decision to transfer plaintiff was not motivated by any discriminatory animus based upon his age or religion. Plaintiff refused to follow the directives of the company, citing that his religion required honesty. Such a religious belief, however, is too broad to be protected. Changing the specifications of the ingots and the manufacturing procedures, moreover, was a business decision, made without regard to the plaintiff's age or religion. When plaintiff refused to follow defendant's procedures, he was reassigned to the newly-created sales position. While this position might not have been an appropriate fit for the plaintiff, it allowed him to remain with the company and allowed the defendant to implement its procedures as it saw fit. While plaintiff may have been constructively discharged, he has failed to present evidence of facts essential to his discrimination claims. Therefore, summary judgment in favor of defendant is appropriate.

Accordingly, the court enters the following:

ORDER

And now, July 6, 2005, upon consideration of the motion for summary judgment filed by the defendant, Colonial Metals Company Inc., together with the briefs and supporting papers filed by the parties, it is hereby ordered that the motion is granted and judgment is entered in favor of defendant and against the plaintiff.