IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra Anderson,                          :
                                         :
                Appellant                :
                                         :
        v.                               : No. 241 C.D. 2017
                                         : Argued:  November 13, 2017
North Star School District               :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge (P)
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  May 1, 2018


        Debra Anderson appeals the order of the Somerset County Court of
Common Pleas (trial court) sustaining the preliminary objection of the North Star
School District (District) and dismissing Anderson's complaint.  We reverse and
remand.

        On April 14, 2015, the District entered into a Compensation Plan with
Anderson as the District's Food Service Director that was signed by Anderson and
the President of the District's Board of Directors (Board), and attested to by the
Board Secretary.  Reproduced Record (R.R.) at 1a-5a.  The Compensation Plan
stated the following, in relevant part:

        The Food Service Director hereinafter referred to as the
        "Employee," shall mean Debra Anderson being that []
        District employee who has general supervisory and
        administrative responsibilities for the food service within
        the [] District *which employee shall be employed two*

*hundred (200) days for each fiscal year at seven (7) hours for each day.* Such work year shall begin on or about August 15th of each fiscal year.

*Id.* at 1a (emphasis added). The Compensation Plan stated that it "is effective July 1, 2015, to June 30, 2019," and stated the compensation and benefits that Anderson would earn during each fiscal year for that period. *Id.* Additionally, the Compensation Plan stated that "[t]he salary hereunder *shall be paid in twenty-four (24) equal payments beginning with the August 25th payroll*[.]" *Id.* (emphasis added).

In April 2016, the District retained Metz Culinary Management, a firm not associated with the District, to operate the District's food service facilities. As a result, the District eliminated Anderson's position and terminated her employment with the District on June 13, 2016.

On November 21, 2016, Anderson filed a complaint in the trial court asserting that the Compensation Plan constituted an employment contract, and that the District materially breached that contract by terminating her employment and failing to pay her the wages and benefits stated therein prior to the expiration of its effective term. R.R. at 6a-12a. Accordingly, Anderson sought judgment against the District in an amount equal to the amount due under the Compensation Plan totaling $123,780.00, and undetermined additional benefits that she would have realized during the remaining term of the Compensation Plan. *Id.* at 11a. Anderson attached the Compensation Plan to the complaint as Exhibit A. *Id.* at 13a-17a.[1]

---

[1] *See* Pa. R.C.P. No. 1019(h), (i) ("When any claim or defense is based upon an agreement, the pleading shall state specifically if the agreement is oral or written. *Note*: If the agreement is in writing, it must be attached to the pleading. . . . When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof[.]").

2

On December 19, 2016, the District filed a preliminary objection to the complaint in the nature of a demurrer, and a brief in support, alleging that the complaint fails to set forth a legally cognizable cause of action. R.R. at 18a-26a. The District argued that public employees are generally at-will employees subject to summary dismissal[2] and that the Compensation Plan is neither an employment contract nor employment under a collective bargaining agreement (CBA) which the District is empowered to enter under the relevant provisions of the Public School Code of 1949 (School Code).[3] R.R. at 20a-21a, 22a-24a. The District asserted that the Compensation Plan is, at best, an administrative compensation plan (ACP) under Section 1164 of the School Code, commonly referred to as "Act 93,"[4] and that this

---

[2] *See, e.g.*, *Bolduc v. Board of Supervisors of Lower Paxton Township*, 618 A.2d 1188, 1190 (Pa. Cmwlth. 1992), *appeal denied*, 625 A.2d 1195 (Pa. 1993) ("In Pennsylvania, public employees are employees-at-will and subject to summary dismissal unless the legislature has explicitly conferred tenure as an integral part of a comprehensive governmental employment scheme. Therefore, public employers do not have power, unless conferred by statute, to enter into employment contracts which prevent them from summarily dismissing their employees at will.") (citations omitted).

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702. The District claimed that Anderson's Food Service Director position is not one of the following enumerated positions for which it could enter into an employment contract under the School Code: (1) Business Administrator pursuant to Section 1089, 24 P.S. §10-1089; (2) Superintendent or Assistant Superintendent pursuant to Sections 1073 and 1077, 24 P.S. §§ 10-1073, 10-1077; (3) Certificated Professional Employee pursuant to Article XI, added by Act of July 11, 2006, P.L. 1092, *as amended*, 24 P.S. §§11-1101 – 11-1195; and (4) employees who are members of a bargaining unit subject to a CBA pursuant to Article XI-A, added by Act of July 9, 1992, P.L. 403, 24 P.S. §§11-1101-A – 11-1172-A.

[4] Added by the Act of June 29, 1984, P.L. 438, 24 P.S. §11-1164. In pertinent part, Section 1164(a) defines "school administrator" as:

> [A]ny employe of the school entity below the rank of district superintendent, executive director, director of vocational-technical school, assistant district superintendent or assistant executive director, but including the rank of first level supervisor, who by

3

Court has found that an ACP is neither a contract nor a CBA. R.R. at 21a, 22a, 24a. *See Curley v. Board of School Directors of Greater Johnstown School District*, 641 A.2d 719, 726 n.5 (Pa. Cmwlth. 1994) ("We want to make it clear that when we say an ACP is binding for the life of the plan, we do not mean that the ACP is itself a

> virtue of assigned duties is not in a bargaining unit of public employes as created under the [Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101 – 1101.2301].

24 P.S. §11-1164(a).

Additionally, with respect to such "school administrators," Section 1164 provides, in relevant part:

> (b)     The purpose of this section is to provide a means by which compensation matters affecting school administrators can be resolved within the framework of a management team philosophy.

> (c)     School employers, upon the written request of a majority of the school administrators in the district, shall be required to meet and discuss in good faith with the school administrators on administrator compensation prior to adoption of the [ACP].

> (d)     School employers shall be required to adopt written [ACPs] which shall apply to all eligible school administrators, as provided in this section, and which shall continue in effect until a time specified in the [ACP], but in no event for less than one school year.

> (e)     An [ACP] adopted pursuant to this section shall include, but not be limited to, the following items:

> (1)     A description of the program determining administrative salaries.

> (2)     Salary amounts or a salary schedule.

> (3)     A listing of fringe benefits.

24 P.S. §11-1164(b) – (e).

4

contract or a [CBA].").[5]  As a result, the District claimed that the Compensation Plan did not confer any type of tenure or term of employment and Anderson's claim for breach of contract against the District is legally insufficient.  R.R. at 24a-25a.

[5] In *Curley*, this Court explained the rationale for the enactment of Act 93, adding Section 1164 to the School Code, as follows:

> The PERA, passed in 1970, gave rank-and-file public employees, including professional employees such as teachers, the right to be represented by unions, to negotiate contracts, and to strike in the event of an impasse.  Although first level supervisors were not given the right to negotiate contracts, collectively bargain, or strike, public employers were required to "meet and discuss" with units of first-level supervisors or their representatives on matters deemed bargainable for other public employees covered by the PERA.  Section 704 of the PERA, 43 P.S. §1101.704.  However, management level employees, that is, those who are "involved directly in the determination of policy or who responsibly direct the implementation thereof," are excluded from participation in any labor bargaining unit.  Section[] 301(2) and 301(16) of the PERA, 43 P.S. §[] 1101.301(2), 1101.301(16).

> Subsequently, in case law construing the PERA, it was held that school principals and assistant principals were management level employees.  *Employees of Carlynton School District v. Carlynton School District*, [377 A.2d 1033 (Pa. Cmwlth. 1977)].  Thus, the largest group of first-level supervisors in the school systems, principals and assistant principals, were deemed ineligible to form separate "meet and discuss" bargaining units because they were managerial employees who had policy-making duties.  It is likely that "first level supervisors who by virtue of assigned duties [are] not in a bargaining unit of public employes as created under [PERA]," are specifically mentioned and included in the definition of school administrators in Section 1164 of the School Code, because of and in direct response to the *Carlynton* decision.  The Board's argument that because Curley was no longer a supervisory employee, he was not a school administrator who was eligible for the ACP, is based on an erroneous understanding of Section 1164.  It was not the intent of this section of the School Code to equate supervisors with administrators and to exclude all but supervisory

5

Anderson filed a brief in opposition to the preliminary objection, arguing that she set forth a cognizable theory of recovery against the District's improper termination of her employment. R.R. at 37a-45a. Anderson asserted that even if the Compensation Plan is characterized as an ACP under Act 93 rather than a contract, this is a distinction without a difference because an ACP is "binding, once adopted, for the life of the plan." *Curley*, 641 A.2d at 726.[6] Specifically, Anderson "recognize[d] that her agreement is an ACP, and she acknowledge[d] that she entered into that agreement of her own volition; however, she [did] not and cannot agree that [the District] can exempt itself from the terms of the ACP by saying that it had no authority to enter into a term contract." R.R. at 43a. Rather, she asserted that the District "drafted and executed an agreement that bound it to [Anderson] until

employees from participation in an ACP, rather first-level supervisors are mentioned in order to insure that such policy-making, managerial, first-level supervisors, such as principals, who were formerly excluded from "meet and discuss" units under the PERA, would now be specifically included in the "meet and discuss" sessions which must occur prior to establishing the [ACPs] under Act 93.

Thus, . . . it was the intent of the School Code to compel school employers to adopt compensation plans, "within the framework of a management team philosophy," (24 P.S. §11-1164(b)), which would include school administrative employees who were historically excluded from bargaining units of public employees, including the "meet and discuss" units of first-level supervisors.

641 A.2d at 725 (footnote omitted).

[6] *See also Chapel v. School District of the City of Allentown*, (Pa. Cmwlth., No. 750 C.D. 2009, filed December 15, 2009), slip op. at 10 ("Relying on *Curley's* holding that an ACP is a binding document once adopted, the trial court here reasoned that, no matter what method it employed, the District could not retroactively revoke the bonus provision of the 2004-07 ACP and was required to fulfill its commitments under that plan. . . . We agree that *Curley* is controlling and compels us to affirm.") (footnote omitted).

6

June 2019, and [Anderson] relied on that agreement until the date of her termination." *Id.* at 44a. As a result, Anderson asked the trial court to overrule the preliminary objection so "that she may enforce the terms of the contract that [the District] drafted and executed for 'the life of the plan.'" *Id.* Anderson further claimed that the ACP's unique language is sufficient to establish a question of fact as to whether the District intended and knew that it would be bound by the ACP for a specific term, until June 2019, so dismissal by preliminary objection was inappropriate and discovery should have been permitted to proceed on this question. *Id.* at 44a-45a.

Following oral argument, the trial court sustained the District's preliminary objection and dismissed Anderson's complaint, stating the reasons for its ruling on the record. The trial court initially determined that Anderson's position with the District "is not a position of employment specifically entitled to any type of contract of employment or tenure under the School Code," so that it "is a position of public employment where the employee is an at-will employee and subject to summary dismissal." R.R. at 68a. The court also found that "even if the [District] Compensation Plan constitutes an [ACP] as defined by Section []1164 of the School Code, the result would still be the same." *Id.* at 69a. The court held:

> [U]nder the rationale of the *Curley* case, had the [District] board decided to continue Anderson's employment, the board would have been bound by the terms of the ACP until it expired by its own terms, but that isn't what happened here.
>
> She didn't continue her employment with the district. She was terminated based upon her at-will status; and upon that termination, the school board is no longer bound by the terms of the [ACP].

*Id.* at 71a.

7

The trial court rejected Anderson's reliance on *Curley* and *Chapel*, explaining:

> [T]he key distinction in both *Curley* and *Chapel* is that the employee there remained employed during the relevant time in question; and when the employee remains employed, the school district is in fact bound by the terms of the [ACP].
>
> But again here, [Anderson] was not employed. She was terminated based upon her at-will status, which I believe the school board had every legal right to do, based upon her employment as a public employee, and there not being any specific authority under the Pennsylvania School Code for the [District] board to in any way provide [sic] her with any type of tenure or a contract of employment.

R.R. at 72a-73a. As a result, the trial court concluded that "based on the facts alleged in [Anderson]'s complaint, and the relevant statutory provisions of the School Code and the case law, it would be appropriate to sustain the preliminary objection[] filed by the [District], and therefore dismiss the plaintiff's complaint at this stage." *Id.* at 73a.

In this appeal,[7] Anderson first argues that the trial court erred in sustaining the District's preliminary objection and dismissing her complaint because

---

[7] As this Court has explained:

> Our scope of review on appeal from an order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court committed legal error or abused its discretion. When considering preliminary objections, we must accept as true all well-pled facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly

the School Code does not preclude the District from entering into an employment contract with its Food Service Director. Specifically, Anderson contends that Section 504 of the School Code[8] authorizes the District to execute such an employment contract, and argues that the language of the Compensation Agreement demonstrates an intent to create such an employment contract for the term of fiscal years stated therein.

In general, "[a]ccording to well-established Pennsylvania law, employment agreements are presumptively terminable at will by either party." *Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1010 (Pa. Super. 1999) (citation omitted). "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Rapagnani v. The Judas Company*, 736 A.2d 666, 669 (Pa. Super. 1999) (citation omitted). As herein, "[t]he party claiming that

---

> insufficient to establish a right to relief; any doubt must be resolved in favor of overruling the demurrer.

*Boyd v. Rockwood Area School District*, 907 A.2d 1157, 1163 n.8 (Pa. Cmwlth. 2006), *appeal denied*, 919 A.2d 959 (Pa. 2007) (citations omitted).

[8] 24 P.S. §5-504. Section 504(a) states:

> (a) The board of school directors in any school district shall have power to establish, equip, maintain, and operate cafeterias, or to contract for any services necessary for the operation of a food service program, in any of the schools under its jurisdiction, whenever in its judgment it is deemed advisable to do so, and shall have power to appoint such directors, supervisors, or other employes as are necessary, and set and pay their salaries.

24 P.S. §5-504(a).

an agreement is for a definite period has the burden of proving that fact . . . [by providing] clear proof that the parties contracted for a specific duration." *Gruenwald*, 730 A.2d at 1010 (citation omitted).

Additionally, "the issue of an at-will employee turns on the interpretation of the contract," and "[t]he interpretation of a contract is a matter of law to be decided by this Court." *Case v. Lower Saucon Township*, 654 A.2d 57, 59 (Pa. Cmwlth. 1995) (citation omitted). In interpreting contracts, "[t]he fundamental rule . . . is to ascertain and give effect to the intention of the parties." *Lower Frederick Township v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988) (internal quotation omitted). The intent of the parties "is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). If a "written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965).

However, if the contract language is ambiguous, the meaning of the agreement's terms is determined by the surrounding facts and circumstances, and that requires a decision for the trier of fact. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). An ambiguity exists if the contract language is subject to two or more reasonable interpretations. *Drummond v. University of Pennsylvania*, 651 A.2d 572, 580 (Pa. Cmwlth. 1994), *appeal denied*, 661 A.2d 875 (Pa. 1995). Initially, the court must ascertain whether the intent of the parties, as manifested only

by the language of the contract, is clear. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d 563, 566 (Pa. 1983).

The parties do not dispute that the instant Compensation Plan is styled as an ACP as defined by Section 1164 of the School Code. Nevertheless, as argued by Anderson, the instant Compensation Plan also contains language that could be interpreted as creating a contract with respect to her services of operating a food service program for the District as authorized by Section 504(a) of the School Code. Specifically, as noted above, the Compensation Plan states that Anderson "*shall be employed two hundred (200) days for each fiscal year at seven (7) hours for each day . . .* begin[ning] on or about August 15th of each fiscal year," and that her "salary hereunder *shall be paid in twenty-four (24) equal payments beginning with the August 25th payroll*[.]" R.R. at 1a (emphasis added). Based on the foregoing ambiguity in the Compensation Plan, the trial court erred in sustaining the District's preliminary objection to Anderson's breach of contract claim. *See, e.g.*, *Kane v. State Farm Fire and Casualty Co.*, 841 A.2d 1038, 1051 (Pa. Super. 2003), *appeal denied*, 871 A.2d 192 (Pa. 2005) ("At any rate, this ambiguity convinces us that it was error for the trial court to dismiss the breach of contract claim against Erie at this early preliminary objection stage of the litigation. *See 220 Partnership v. Philadelphia Electric Company*, [650 A.2d 1094, 1096 (Pa. Super. 1994)] (doubts as to the legal sufficiency of the complaint should be resolved in favor of overruling the demurrer).").[9]

---

[9] Based on our disposition of this claim, we need not reach the other claims raised by Anderson in this appeal. Moreover, to the extent that Anderson asserts other claims or legal theories that were not raised in her complaint or in the trial court, these claims have been waived for purposes of appeal. Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997) ("Rule 302(a) clearly states that issues not raised in the trial court are waived

11

Accordingly, the trial court's order is reversed, and the matter is remanded to the trial court to enter an order overruling the District's preliminary objection.

 

 

_____

MICHAEL H. WOJCIK, Judge

and cannot be raised for the first time on appeal. Pennsylvania courts have consistently applied this rule. The appellate court may *sua sponte* refuse to address an issue raised on appeal that was not raised and preserved below[.]") (citations and footnote omitted); *Kemp v. Qualls*, 473 A.2d 1369, 1374 (Pa. Super. 1984) ("It is well-established that a party may not successfully advance a new and different theory of relief for the first time on appeal, while failing to assert on appeal other grounds which were submitted for the same purpose in the lower court.") (citation omitted).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debra Anderson,                  :
                                   :
                  Appellant   :
                                   :
                   v.        : No. 241 C.D. 2017
                                   :
North Star School District   :

## O R D E R

AND NOW, this 1ˢᵗ day of <u>May</u>, 2018, the order of the Somerset County Court of Common Pleas dated January 25, 2017, at No. 622 Civil 2016 is REVERSED, and the matter is REMANDED to that court to enter an order overruling the preliminary objection of the North Star School District.

        Jurisdiction is RELINQUISHED.

 

_____
MICHAEL H. WOJCIK, Judge