**Michael D. JANIS, Appellee,**

v.

**AMP, INCORPORATED, Appellant.**

Superior Court of Pennsylvania.

Argued April 15, 2004.
Filed July 30, 2004.

---

Douglas G. Smith, Pittsburgh, for appellant.

Michael J. Crocenzi, Harrisburg, for appellee.

BEFORE: BENDER, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 AMP, Incorporated, former employer of the appellee Michael D. Janis, appeals from the September 17, 2003, judg-

ment of $120,221.90 [1] entered for plaintiff in his breach of contract action. After a careful review of the record, we affirm.

¶2 Appellee was employed by appellant as an industrial engineer in Florida when he was approached by a member of management and asked if he would be interested in an expatriate assignment. Appellant expressed an interest, he was interviewed and offered the position, and subsequently was transferred, pursuant to the terms of the parties' July 1, 1992 agreement, to Hermosilla, Mexico. Appellee worked at that facility until April 30, 1999, when his employment with appellee was unilaterally terminated. In August 1999, appellee filed suit alleging appellant had breached the parties' employment contract by (1) failing to pay him the agreed upon bonuses; (2) failing to provide him with a comparable position in the United States following completion of his assignment in Mexico; and (3) unilaterally terminating his employment contract, the five-year term of which, appellee argued, automatically had renewed at the expiration of the July, 1992 contract. After much procedural posturing, the case went before a jury on January 27 and 28, 2003, and a verdict of $114,545.50 was entered in appellee's favor. Following post-trial motions, the verdict was molded to include an additional $2,838.20, for a total of $117,383.70. This appeal followed.

¶3 AMP argues it was entitled to a directed verdict or judgment notwithstanding the verdict (JNOV) because the jury erroneously concluded appellee had overcome the presumption of at-will employment. Appellant argues it is entitled to a new trial because the court erred by instructing the jury that an expired contract impliedly renews for the same term (duration). Appellant also contends it is entitled to a new trial or JNOV because the evidence established that as an at-will employer, it was free to modify the terms of appellee's employment, and appellee waived any entitlement to a bonus "by failing to complain" and continuing to work after the bonus program was terminated. Appellant's brief at 20.

¶4 Our standard of review when considering whether a directed verdict or JNOV was appropriate is as follows.

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a judgment N.O.V. can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the

1. The January 27, 2003 jury verdict was a net award of $114,545.50 for the plaintiff. By Order entered July 24, 2003, that award was molded to reflect an additional award for plaintiff of $2,838.20, for a total of $117,383.70. We are unaware of how the $120,221.90 judgment was calculated, but the amount has not been challenged on appeal.

second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Capital Care Corp. v. Hunt*, 847 A.2d 75, 81–82 (Pa.Super.2004) *citing Goldberg v. Isdaner*, 780 A.2d 654, 659–660 (Pa.Super.2001), appeal denied, 573 Pa. 667, 820 A.2d 705 (2003). Determinations of credibility are for the fact finder. *See Ferrer v. Trustees of the University of PA.*, 573 Pa. 310, 825 A.2d 591 (2003) (holding questions of credibility and conflicts in evidence are for the finder of fact to resolve and, absent an abuse of discretion, an appellate court should not disturb those findings).

■ ¶ 5 Appellant argues that the language of the "summary of policy provisions" applicable to appellee's job assignment in Mexico was not definitive enough to overcome the presumption of at-will employment and create an employment contract. Appellant points specifically to paragraphs 2, 15 and 16, which, for ease of explanation, are set forth below.

(2) The assignment is expected to last *three years* but no more than *five years*. Based on business needs, the employee may be returned to the United States prior to *July 1995* and the Company may entertain a personal request to return sooner.

(15) In the event the Company terminates your employment while abroad, the Company will pay moving expenses for your household goods and furniture as outlined in the Policy. Expenses for you and your family to return to your point of origin will be paid according to the Policy provided you return within 30 days of termination. No expenses will be paid after your return to your point of origin

(16) In the event you voluntarily resign your employment while abroad, you must give 30 days notice of your intention to resign. The Company reserves the right to determine if expenses associated with your transportation to your point of origin will be paid.

Record, No. 2, Complaint, Exhibit B (emphasis in original). It is appellant's position this language does not serve to form a contract between the parties, nor does it rebut the presumption of at-will employment recognized in Pennsylvania. In particular, appellant points to the emphasized language of paragraph number two and argues it does not set forth a term of "specific duration" necessary to rebut the presumption; "[t]he assignment is expected to last three years but no more than five years."

■ ¶ 6 "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Rapagnani v. The Judas Company*, 736 A.2d 666, 669 (Pa.Super.1999), *quoting Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 688 A.2d 211, 214 (1997). "Where an employment arrangement does not contain a definite term, it will be presumed that the employment at-will rule applies. Generally an employment contract for a broad, unspecified duration doe not overcome the presumption of an at-will employment. Definiteness is required." *Id.* at 670 (quotations and citations omitted). When considering a purported employment contract, "the courts must remain flexible and not allow the [at-will] presumption to foreclose proof of the parties' intent. Though the rule is a procedural safeguard, a court's primary task is to ascertain and enforce [the parties'] intent." *Greene v. Oliver Realty*, 363 Pa.Super. 534, 526 A.2d 1192, 1199 (1987),

*appeal denied,* 517 Pa. 607, 536 A.2d 1331 (1987) (holding the at-will employment presumption will be overcome if the employee shows with clarity and specificity that the parties contracted for a definite period); *see also Marsh v. Boyle,* 366 Pa.Super. 1, 530 A.2d 491, 493 (1987) (reasoning "parties' intentions regarding the agreement, gleaned from the surrounding circumstances, may enable an agreement to 'rise to the requisite level of clarity' ") (citation omitted). "To ascertain the parties' intent, an important factor to consider is the presence of additional consideration." *Id.*

¶ 7 We find the facts support the jury's conclusion the parties negotiated and executed a valid contract for employment, for a specific duration and for additional consideration, thereby rebutting the at-will presumption. We therefore will not disturb that finding. *See Ferrer, supra.* In so finding, we look not only at the facts and testimony before us, but consider the ordinary business dealings when enticing an employee to take a foreign assignment.

¶ 8 The issue of at-will employment previously was addressed as a result of the parties' motions for summary judgment. President Judge Joseph H. Kleinfelter, who presided over that segment of the case stated,

> AMP, the drafter of this agreement, has underscored the terms of duration set forth above, which suggest emphasis on a definite time period of [appellee's] assignment. We believe these terms are sufficiently clear to establish that [appellee's] assignment at the Hermosilla facility was contemplated by both parties to be between three and five years. Notwithstanding this perceived clarity, any ambiguity must be construed against AMP, the drafter of the agreement. *Smith v. Windsor Group,* 2000 PA Super 67, 750 A.2d 304, 308 (Pa.Super.2000).

*Janis v. AMP, Incorporated,* 58 D. & C. 4th 144, 149–150 (2002), In resolving the issue at trial, the Honorable John F. Cherry cited President Judge Kleinfelter's Opinion denying in part appellant's motion for summary judgment, considered the three paragraphs at issue, and concluded,

> [t]he phrase "expected to last three years but not more than five years" creates a definite term of duration for employment lasting for three years with a maximum of five years. Cleverly worded phrases which are essentially termination clauses for either side does [sic] not render [appellant] an at-will employee. At best the terms hold an ambiguity that must be construed against the [employer] as the drafter of the agreement.

Trial Court Opinion, Cherry, J., 7/24/03 at 4, citing *Janis, supra.* We agree that the testimony and evidence introduced at trial support this conclusion.

¶ 9 According to appellee's testimony, with the exception of one six-month period, he was employed by appellant since 1973, primarily in the field of industrial engineering. N.T., 1/27–28/03, at 16–17. In the spring of 1992, the appellant was looking to expand its work force at its Hermosilla, Mexico facility, and appellee was asked by his supervisor, a vice-president for appellant, whether he would be interested in a foreign assignment. Appellee replied in the affirmative and an interview was conducted during which appellant told appellee the position included a promotion, a bonus plan and housing, the houses being built by the company for the express purpose of housing AMP professionals. *Id.* at 18–19. Several days later, appellee was again contacted by his supervisor and provided with a summary of the promised bonus plan, designed as "an incentive for taking a drive to Mexico... [i]t was the ability to earn some extra money over and

above pay." *Id.* at 21. In fact, the bonus plan to which appellee refers stated in pertinent part the following, indicative that the bonus plan was a lure to attract employees to accept the foreign assignment: "[i]n order to attract the best possible candidates for the aforementioned assignments, we believed that a bonus incentive is required. Therefore, the following recommendations are hereby submitted for you[r] consideration and approval[.]" The AMP Mexico Incentive Plan document then specified how much each position would earn as a bonus in addition to the salaried position. Record, No. 2, Complaint, Exhibit "A," at 2.

¶ 10 Within one month, appellee met with yet another company executive who "went over a document with [appellee] that the company had drawn up of what the company would do for me if I accepted the position in Mexico." N.T. at 21–22; Complaint, Exhibit "B," Summary of the Policy Provisions which Apply to Expatriate Assignment of Michael D. Janis". As additional compensation, the company also provided appellee with a "goods and service differential" and "utility allowances" that compensated expatriates for the increased cost of living abroad. *Id.;* N.T. at 31–32. The parties agreed to the terms of the agreement and it was signed on June 24, 1992. Appellee testified he then began preparing for his August 1992 move to Mexico, getting the required physical and selling his home in Pennsylvania, for which appellant bore a majority of the cost. Once in Mexico, appellee assumed the role of industrial engineer, having daily dealings with his Mexican counterparts. Consequently, appellant approved and paid for Spanish lessons for appellee. *Id.* at 28–29.

¶ 11 In January of 1996, the vice-president of the corporation went to Mexico to inform appellee, without explanation, that he would no longer be receiving his regular bonus; all other perks continued, however. *Id.* at 33, 40. While appellee did not complain to the vice-president, he did voice his concerns to his supervisor, but carried his complaints no higher for fear of recriminations. In February 1999, appellee was advised that he could either take what amounted to a demotion and remain in Mexico, losing all benefits enjoyed since his 1992 transfer, or be laid off, either in Mexico or Pennsylvania. *Id.* at 33, 37.

¶ 12 We are convinced the agreement between the parties was for a definite, minimum time period of three to five years, and appellee's move to a foreign, economically deprived country constituted a substantial hardship or "additional consideration". We are so convinced based not only on language of the agreement, but also on the testimony presented and the totality of the circumstances involved. A corporation does not casually offer expatriate employment to its employees, nor does an employee with children and lifelong family ties to a particular geographic area casually pull up stakes to move 3,000 miles from home without some guarantee of permanency. It is more than logical that the agreement between the parties set forth a definitive duration, with any ambiguous language included therein designed to protect the corporate entity should business falter and suffer an economic downturn. We believe that is exactly what happened here. When appellee's bonus was stopped, all other perks designed to entice appellee to move to and remain in Mexico continued. It was not until three years later that a sagging manufacturing business, much like the steel business in the United States in the 1980's, caused appellant to reduce its workforce and lay off appellee. Based on the law and facts presented, and the reasoning of the trial court and this Court, we conclude the parties negotiated a contract for a definite duration thereby

defeating the presumption of employment at-will.

 ¶ 13 We turn now to appellant's argument that AMP is entitled to a new trial because the trial court incorrectly instructed the jury that an expired contract term renewed for the same term, herein three to five years. Appellant's brief at 16. Employing an analogy to landlord/tenant law, appellant argues that a contract for more than one year, such as the one at issue, renews not for the same period of time (three to five years) but on a year-to-year basis. *Id.* at 17.

 ¶ 14 When considering a challenge to jury instructions we are guided by this standard:

> A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

*Commonwealth v. Geathers,* 847 A.2d 730, 733, 2004 Pa.Super.LEXIS 608 *5 (Pa.Super.2004) (*quoting Commonwealth v. Ragan,* 560 Pa. 106, 120–21, 743 A.2d 390, 397–398 (1999) (citations omitted)).

¶ 15 We begin by noting with disfavor appellant's failure to include in his argument a citation to the record identifying where we might locate the objected-to instruction, causing the Court to peruse the entire charge. We have identified the in-struction, however, and agree with the specific instruction as given:

> If you decide there was a contract for a definite duration between [appellee] and [appellant], then you must determine whether the terms of the contract automatically renewed.

> If you find that [appellee] continued to provide the same employment services to [appellant] at the facility in Mexico without objection from [appellant], then there is a presumption that his employment contract automatically renewed based on the same terms and conditions of service, including the duration of his service as the original contract.

> The presumption can be overcome if you find that [appellant] did not intend for the contract to renew. [Appellee] also claims he provided additional consideration to [appellant] which should result in a promise to him that should be in force even without a contract.

N.T., at 98–99. In a 1949 Superior Court case, we held that the employee's continuation of his employment, without objection, following the expiration of the employee's one-year contract, resulted in a renewal by implication of the same contract, under the same terms and conditions. *Smith v. Shallcross,* 165 Pa.Super. 472, 69 A.2d 156 (1949); *see also DeMuth v. Miller,* 438 Pa.Super. 437, 652 A.2d 891 (1995), *appeal denied,* 542 Pa. 634, 665 A.2d 469 (1995), *cert. denied,* 516 U.S. 1114, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). In support of its decision the *Shallcross* Court cited to *Williston on Contracts.*

> Where a contract of employment for a definite time is made and the employee's services are continued, after the expiration of the time, without objection, the inference is that the parties have assented to another contract for a *term of the same length with the same salary and*

*conditions of service,* following the analogy of a similar rule in regard to leases.

*Shallcross, supra,* at 158 (emphasis in original), *quoting* 1 Williston, Contracts, § 90. We are unconvinced by appellant's argument that because the *Shallcross* Court analogizes the employment contract to a leasehold agreement, any extension of the parties' agreement can only be on a year-to-year basis. That aside, even if appellee's contract did renew on a year-to-year basis rather than a three to five-year term, the terms contained therein remained the same. The trial court's charge to the jury was correct and a new trial is not appropriate.

¶ 16 Lastly, appellant argues it is entitled *to a new trial or JNOV on the* bases "that as an at-will employer, [it] was free to change the benefits and terms of employment of [appellee,] and [appellee] waived any changes in terms and conditions of employment by failing to complain." Appellee, appellant argues, acquiesced to the elimination of the bonus program when he did not challenge the loss of the benefit and he continued to work without objection or interruption. Appellant's brief at 20.

¶ 17 Given our resolution of the employment-at-will issue, we need not address appellant's first argument that it was entitled to change appellee's employment status at-will. As to the second part of his argument, that appellee waived any objection to a change in his contract by acquiescing, appellant relies on *Ressler v. Jones Motor Co., Inc.,* 337 Pa.Super. 602, 487 A.2d 424 (1985) and *Trainer v. Laird,* 320 Pa. 414, 183 A. 40 (1936). In *Trainer,* the Court ruled, *inter alia,* that in an at-will employment setting, either party can modify "without limitation" the terms of employment, and an employee's failure to object results in waiver of any objection.

¶ 18 We do not dispute that holding, but, as stated before, this is not an at-will situation. Moreover, appellee did indeed voice his displeasure, albeit not strenuously or relentlessly. At trial, appellee testified that he complained to his supervisor about the elimination of his bonus, but was advised to carry his complaints no higher. Appellee's supervisor did complain to those who controlled this perk, and appellee believed it useless to contact the same people when his supervisor's pleas went unheard.

[My supervisor] had called several people up in Harrisburg, fighting for this bonus. He was very upset about it. I knew that [my supervisor] can hire in the organization, [and] may be more indispensable than I am. I was told not to say another word about it or [my supervisor] would be in serious trouble. I knew that it is useless for me to call, I am going to be talking to the same people [my supervisor had] called. It is useless for me. I figured I had one of two things. I could choose between getting an attorney and going and trying to get the bonus, or I could have a job because I was convinced that as soon as I start anything, as soon as I start complaining, where is my bonus, I would lose my job.

N.T., at 38. Appellee's testimony belies appellant's argument his complacency resulted in a waiver of any objection to the bonus elimination.

¶ 19 Having found each of appellant's arguments devoid of merit, we find AMP is not entitled to a new trial or JNOV, and we affirm the judgment entered in favor of the appellee, Michael D. Janis.

¶ 20 Judgment affirmed.