**Robert J. GUERRA, Appellant**

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA, Appellee.**

Superior Court of Pennsylvania.

Argued June 21, 2011.

Filed Aug. 24, 2011.

Lawrence R. Woehrle, Philadelphia, for appellant.

Daniel Segal and Dylan Steinberg, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., GANTMAN, and OTT, JJ.

OPINION BY GANTMAN, J.:

Appellant, Robert J. Guerra, appeals from the judgment on the pleadings entered in the Philadelphia County Court of Common Pleas in favor of Appellee, Redevelopment Authority of the City of Philadelphia ("RDA"). Appellant asks us to determine whether RDA's Rules and Regulations for Personnel Administration created an enforceable contract of employment that allowed for Appellant's dismissal only "for cause." Appellant asks whether he can assert promissory estoppel, as an alternative road to relief, based upon his detrimental reliance on RDA's Rules and Regulations for Personnel Administration. For the following reasons, we hold RDA's Rules and Regulations for Personnel Administration did not create an enforceable contract of employment or tenure under either contract law or estoppel theory, and a trial on these claims would prove fruitless. Accordingly, we affirm the trial court's entry of judgment on the pleadings in this case.

The relevant facts and procedural history of this case are as follows:

[Appellant] was an employee of RDA from 1975 through June 9, 2008. Between 1994 and 2008, [Appellant] served as Acting General Counsel and then as General Counsel. On June 9, 2008, the RDA's Board of Directors terminated [Appellant's] employment. Appellant commenced this action by filing a Complaint on October 21, 2008.

In Count I of his Complaint, Appellant alleged that the RDA's Rules and Regulations for Personnel Administration ("Rules and Regulations") created a contract that only allowed his dismissal "for cause." [Appellant] alleged in his Complaint that his termination was not "for cause" within the meaning of the Rules and Regulations, creating a breach of contract. [Appellant] alleged in Count II of his Complaint that the RDA represented to him that his employment could not be terminated except "for cause" and [Appellant] reasonably relied on this to his detriment.

On November 10, 2008, RDA filed its Answer, Affirmative Defenses and New Matter to the Complaint. On January 7, 2009, the RDA filed an Amended Answer to the Complaint with Affirmative Defenses and New Matter. On [January] 29, 2009, [Appellant] filed his Reply to [RDA's] First Amended New Matter. The RDA filed a Motion for Judgment on the Pleadings on February 3, 2009, requesting judgment on the pleadings on Counts I and II of [Appellant's] Complaint. [Appellant] filed an Answer to the Motion for Judgment on the Pleadings on February 23, 2009. [RDA] replied on March 2, 2009, and [Appellant] filed a Sur Reply on March 10, 2009. Oral Arguments on the Motion for Judgment on the Pleadings were held on April 21, 2009. On June 30, 2009, the court found against [Appellant] and granted [RDA's] Motion for Judgment on the Pleadings as to Counts I and II. [Appellant] filed a timely appeal of the decision ... on August 25, 2010, after settlement of the remaining counts of the complaint in 2010.[1]

---

1. Appellant filed a *praecipe* to settle, discontinue, and end Counts III and IV on August 23, 2010.

(Trial Court Opinion, filed January 4, 2011, at 1–2) (internal citations omitted). On September 1, 2010, the trial court directed Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on September 21, 2010.

Appellant raises the following issues for our review:

> DID COUNT I OF [APPELLANT'S] COMPLAINT SET FORTH A VIABLE CLAIM FOR BREACH OF CONTRACT BY HIS EMPLOYER, [RDA], BASED ON RDA'S FORTY–FIVE (45) YEAR–OLD RULES AND REGULATIONS FOR PERSONNEL ADMINISTRATION (WHICH PRECLUDED THE TERMINATION OF [APPELLANT'S] EMPLOYMENT WITHOUT CAUSE), NOTWITHSTANDING THAT RDA CONTENDED THAT IT WAS A COMMONWEALTH AGENCY, THAT THE PROMULGATION OF THOSE RULES AND REGULATIONS WAS *ULTRA VIRES*, AND THAT [APPELLANT] WAS ACCORDINGLY AN EMPLOYEE AT WILL?
>
> DID COUNT II OF [APPELLANT'S] COMPLAINT SET FORTH A VIABLE PROMISSORY ESTOPPEL CLAIM AGAINST HIS EMPLOYER, RDA, BASED ON RDA'S FORTY–FIVE (45) YEAR–OLD RULES AND REGULATIONS FOR PERSONNEL ADMINISTRATION (WHICH PRECLUDED THE TERMINATION OF [APPELLANT'S] EMPLOYMENT WITHOUT CAUSE), WHERE HE AVERRED HIS REASONABLE RELIANCE ON RDA'S RULES AND REGULATIONS AND RDA'S SUBSEQUENT ACTIONS WITH RESPECT TO SAME, AND THE DAMAGES HE SUSTAINED AS A RESULT OF THAT RELIANCE, NOTWITHSTANDING THAT RDA CONTENDED THAT IT WAS A COMMONWEALTH AGENCY, THAT THE PROMULGATION OF THOSE RULES AND REGULATIONS WAS *ULTRA VIRES*, AND THAT [APPELLANT] ACCORDINGLY COULD NOT RELY ON THE REPRESENTATIONS IN THOSE RULES AND REGULATIONS?

(Appellant's Brief at 2).

 The applicable scope and standard of review are as follows:

> Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the [trial] court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.
>
> On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings, which should properly be tried before a jury, or by a judge sitting without a jury.
>
> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the [trial] court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may

not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Consolidation Coal Co. v. White,* 875 A.2d 318, 325–26 (Pa.Super.2005) (internal citations and quotation marks omitted).

In his first issue, Appellant asserts that for forty-five years, RDA held out to its employees, through its Rules and Regulations for Personnel Administration, that RDA could not terminate an employee "without cause." Appellant avers RDA should be equitably estopped from asserting the defense that it lacked legislative authority under its enabling statute to create anything other than an at-will employment relationship with Appellant. Appellant concludes the trial court erred in granting RDA's motion for judgment on the pleadings with respect to Appellant's breach of contract claim.

In response, RDA argues the doctrine of equitable estoppel does not apply to this case; and, under prevailing law, equitable estoppel is not an exception to Pennsylvania's at-will employment doctrine. RDA contends, as it did in the trial court, that RDA lacked legislative power under the relevant enabling statute to create anything other than an at-will employment relationship with Appellant. RDA submits that, absent any legislative or executive action, it was beyond RDA's power to create tenured employment at all; and its Rules and Regulations for Personnel Administration could not create or form anything other than an at-will employment relationship. RDA concludes the court properly entered judgment on the pleadings in favor of RDA on Appellant's breach of contract claim. We agree.

Regarding breach of contract claims, we observe:

[T]o successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.

*Gorski v. Smith,* 812 A.2d 683, 692 (Pa.Super.2002), *appeal denied,* 579 Pa. 692, 856 A.2d 834 (2004). Nevertheless, "Pennsylvania law holds that employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason." *Werner v. Zazyczny,* 545 Pa. 570, 578, 681 A.2d 1331, 1335 (1996) (internal quotation marks omitted).

[A]s a general rule, no common law cause of action exists against an employer for termination of an at-will employment relationship. Moreover, exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten the clear mandates of public policy.

*Hunger v. Grand Cent. Sanitation,* 447 Pa.Super. 575, 670 A.2d 173, 175 (1996), *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996) (internal citations and quotation marks omitted).

"This general rule is not abrogated just because the employee is a governmental worker since one does not have a *per se* right in governmental employment." *Werner, supra* at 578–79, 681 A.2d at 1335.

Without more, an appointed public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will. As we said in *Mitchell v. Chester Housing Authority,* 389 Pa. 314, 328, 132 A.2d 873, 880 [ (1957) ], with reference to a state agency employ-

ee but applicable in general, "good administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policymaking function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large." The power to dismiss summarily is the assurance of such responsibility.

**Tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace.** It represents a policy determination that regardless of personality or political preference or similar intangibles, a particular job, to be efficiently fulfilled, requires constant and continuous service despite changes in political administration.

\* \* \*

Furthermore, where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating.

*Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 154–55, 166 A.2d 278, 280–81 (1961) (emphasis added). *See also Mahoney v. Philadelphia Housing Authority,* 13 Pa.Cmwlth. 243, 320 A.2d 459 (1974) (holding legislature did not provide housing authority with ability to alter employees' at-will status; therefore, terminated employees could not maintain *assumpsit* actions based on breach of contract).

■■■ "Equitable estoppel is a doctrine whereby a party will be bound by [its] representations if they are justifiably relied upon by another party." *Northcraft v. Edward C. Michener Associates, Inc.,* 319 Pa.Super. 432, 466 A.2d 620, 626

(1983). "Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." *Id.* "[A] municipality like a private corporation is subject to the doctrine of estoppel. It may be estopped to deny the authority of its agents and employees to act if it has the power to, and by its conduct does, clothe an agent with the appearance of authority...." *Ervin v. City of Pittsburgh,* 339 Pa. 241, 250, 14 A.2d 297, 301 (1940) (internal citations omitted). A municipality, however, **"cannot be bound for an act of its agent in excess of its corporate powers, or in violation of positive law, or for an act requiring legislative or executive action."** *Id.* at 250–51, 14 A.2d at 301. (emphasis added).

■■■ Additionally, the Urban Redevelopment Law is the enabling statute for RDA. 35 P.S. §§ 1701–1719.2. The Urban Redevelopment Law addresses the employment of counsel as follows:

The members of an Authority shall select from among themselves a chairman, a vice-chairman, and such other officers as the Authority may determine. An Authority may employ a secretary, an executive director, its own counsel and legal staff, and such technical experts, and such other agents and employe[e]s, permanent or temporary, as it may require, and may determine the qualifications and fix the compensation of such persons.

\* \* \*

35 P.S. § 1707.

Instantly, the trial court reasoned the Urban Redevelopment Law did not give

RDA any power at all to create a contract with Appellant for tenured employment:

In the present case there is no evidence presented or suggestion made that there was legislative authority for the RDA to create a contract with [Appellant]. Without any statutory basis, the RDA was not able to create a contract with [Appellant] for tenured employment and therefore Appellant's contract claim must fail.

The facts in the instant case mirror those of *Banks v. RDA,* [416 F.Supp. 72 (E.D.Pa.1976), *affirmed,* 556 F.2d 564 (3rd Cir.1977), *cert. denied,* 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 288 (1977) ] where the plaintiff worked for RDA as a permanent employee. He brought a claim against RDA, asserting that Section 23 of RDA's Rules and Regulations, the same section at issue in the present case, created a contract of employment that only allowed for his termination "for cause." There, the court held "Pennsylvania law does not allow a state agency to create tenure unless the legislature specifically grants the agency the power to do so." After examining the RDA statute, the court determined that "RDA employees ... are employees at will" and no power was given to RDA to contract away this right of dismissal. In reaching its decision, the court in *Banks* considered a case interpreting the enabling statute of the Philadelphia Housing Authority, where the court held that "this Act contains no legislative expression that housing authorities have the power to create tenure by contract, expressed or implied." [*Mahoney, supra* at 246, 320 A.2d 459] (discussing enabling statute, 35 P.S. § 1541). In *Banks,* the court determined that the Philadelphia Housing Authority statute was similar to the enabling statute of the RDA, and the RDA enabling statute does not allow tenured employment. This [c]ourt finds this argument persuasive and concludes that both *Banks* and *Mahoney* establish that the RDA enabling statute does not allow the RDA to create tenure by contract.

\* \* \*

Under *Scott[, supra],* it is clear that granting employees tenure was in fact beyond the RDA's corporate powers and also that contracting away its right to summarily dismiss its employees was an act requiring legislative action—the grant of power to do so by the legislature. The RDA's action, therefore, fits within the *Ervin* exceptions and the RDA cannot be estopped from asserting that the Rules and Regulations are invalid,[2] were invalid when they were promulgated and from claiming that they never applied to any RDA employees.

The Pennsylvania Supreme Court has taken every opportunity to reaffirm the importance of *Scott* and state[s] that it is still applicable and still good law.

\* \* \*

In 1995, the Pennsylvania Supreme Court again reaffirmed *Scott.* There is no power under the law to enter into contracts of employment that contract away the right of summary dismissal, unless the power is set forth expressly in the enabling legislation. The holding of *Scott* has not been abrogated by the Supreme Court of Pennsylvania or by the legislature. Equitable estoppel has been affirmatively rejected by this [C]ourt as an exception to the at-will rule.

**2.** We interpret this statement to mean RDA's Rules and Regulations for Personnel Administration cannot create tenure, absent legislative action.

(*See* Trial Court Opinion at 5–8) (some internal citations and quotation marks omitted). We accept this analysis.

The present case does not involve the possession and improper exercise of certain powers. Here, RDA completely lacked any power to create anything other than at-will employment relationships with its employees. *See* 35 P.S. § 1701–1719.2. Despite Appellant's contentions to the contrary, RDA did not improperly exercise some legitimate authority. *See Scott, supra; Mahoney, supra. Compare Albright v. City of Shamokin,* 277 Pa.Super. 344, 419 A.2d 1176 (1980) (holding Third Class City Code provided municipality with authority to create retirement plan for its employees; nevertheless, municipality adopted retirement plan that failed to comply with enabling legislation; consequently, municipality could not benefit by its own mistake to detriment of innocent employee). Therefore, Appellant's first claim must fail.

 In his second issue, Appellant contends RDA essentially promised him, through its Rules and Regulations for Personnel Administration, that his employment could be terminated only "for cause." Appellant avers he reasonably relied on this promise to his detriment. Appellant concludes the trial court erred in granting judgment on the pleadings in favor of RDA with respect to Appellant's promissory estoppel claim.

RDA responds that the doctrine of promissory estoppel is inappropriate in this case. RDA asserts a promissory estoppel argument should not be allowed to undercut the state's at-will employment doctrine. RDA insists Appellant cannot recover against RDA, because RDA had no authority or power to promise continued employment or to create tenure for its employees. Under these circumstances, RDA claims its Rules and Regulations for Personnel Administration cannot be interpreted as an enforceable promise of employment. RDA concludes the court properly entered judgment on the pleadings in its favor on Appellant's promissory estoppel claim. We agree.

 To maintain a promissory estoppel action:

> [T]he aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise. As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute. Thus, as promissory estoppel makes otherwise unenforceable agreements binding, the doctrine sounds in contract law. . . .

*Crouse v. Cyclops Industries,* 560 Pa. 394, 403, 745 A.2d 606, 610 (2000) (internal citation omitted).

> The doctrine embodied in [Section] 90 of the Restatement (Second) of Contracts, the doctrine of promissory estoppel, is the law of Pennsylvania. It is also the law of Pennsylvania that the Commonwealth or its subdivisions and instrumentalities **cannot** be estopped by the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts which require legislative or executive action.

*Central Storage & Transfer Co. v. Kaplan,* 487 Pa. 485, 489, 410 A.2d 292, 294 (1979) (internal citations and quotation marks omitted) (emphasis added).

Instantly, the trial court determined Appellant could not proceed on the theory of promissory estoppel, because RDA had no

legislative authority to promulgate Rules and Regulations to create tenure:

> Appellant relies on *Albright[, supra],* to support his claim that the RDA can be subject to his promissory estoppel claim. In *Albright,* the City enacted an ordinance providing retirement benefits for certain qualifying employees. The original Ordinance stated that the normal retirement date would be the first day of the month following the person's 65th birthday and the completion of ten years of service, whichever was later. Albright applied for and received his pension at sixty-seven years of age and had completed ten years and one month of service. The City then enacted a new ordinance requiring employee contributions and a minimum of twelve years of service to qualify. Albright did not meet either of the new qualifications, and the City notified him that they would stop his payments. Although the City was not required to adopt a retirement system for its employees, when it chose to do so, it was required to conform its plan to that authorized by the statute. When a municipality has no power to enact ordinances except as authorized by the legislature, any ordinance not in conformity with its enabling statute is void.

In *Albright,* the City had the power to create a retirement plan under the Third Class City Code. There, the court observed that

> Ordinarily, a government agency will not be bound for an act of its agents in excess of its corporate powers. However, **there is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional.** The former are *ultra vires* in the primary sense and void; the latter, *ultra vires* only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equality and justice.

The court in *Albright* held that the City had been empowered to provide for the retirement of their employees; if the City failed to comply in all respects with the enabling legislation, it should not be permitted to benefit from its own mistake to the detriment of an innocent employee.

[Here,] RDA had no grant of power to give any employee tenured employment. Rather than be granted the power and improperly enact it, its enabling statute does not allow for it to have the power to grant tenure at all. The RDA's Rules and Regulations are an example of an act utterly beyond the jurisdiction of a municipal corporation. *Scott* makes it clear that the power to grant tenure is not granted by the basic powers given in the enabling legislation. It must be spelled out clearly by the legislature. Because the RDA Rules and Regulations fall into the first category under *Albright,* Appellant's promissory estoppel claim cannot go forward.

(*See* Trial Court Opinion at 9) (internal citations and quotation marks omitted) (emphasis added). Again, we accept the court's analysis, emphasizing that the doctrine of promissory estoppel cannot be asserted to bind a government agency beyond the powers bestowed in its enabling statute. *See Central Storage & Transfer Co., supra; Albright, supra.* Therefore, Appellant's second claim also fails.

Based upon the foregoing, we hold RDA's Rules and Regulations for Person-

nel Administration did not create an enforceable contract of employment or tenure under either contract law or estoppel theory, and a trial on these claims would prove fruitless. Accordingly, we affirm the trial court's entry of judgment on the pleadings in this case.

Judgment affirmed.