**Krutulis v. Community Medical Center**

C.P. of Lackawanna County, No. 2009 CIV 1474

*Peter G. Loftus*, for plaintiff.
*James C. Oschal* and *Kieran M. Casey*, for defendant.

MINORA, *J.*, June 4, 2015—

## I. INTRODUCTION

Before the Court is the Motion for Summary Judgment of Defendant, Community Medical Center ("CMC"). By agreement of the parties, this matter was submitted to the Court to be decided on the briefs without oral argument.[1]

---

1. Defendant CMC filed its Motion for Summary Judgment on November 8, 2013. After various extensions of time were granted by the Court and/or agreed upon by the parties, Plaintiff submitted her Brief in

For reasons more fully articulated herein, of Defendant CMC's Motion for Summary Judgment is HEREBY GRANTED and Plaintiff's Complaint is HEREBY DISMISSED with prejudice.

## II. FACTUAL/ PROCEDURAL HISTORY

Plaintiff Michelle Czachor Krutulis ("Krutulis") instituted this action by Complaint filed on March 3, 2009, advancing a claim for Wrongful Discharge from her employment with Defendant CMC. Plaintiff alleges that she was terminated following accusations she made against CMC and for contact with a *Scranton Times* newspaper reporter following the death of a patient at CMC. Plaintiff was hired by Defendant CMC in 1983 as a Staff Nurse in the Psychiatric Ward of the hospital and held various positions with CMC between 1983 and 2006. (Compl. ¶¶ 3, 6). In 2005, Plaintiff was working as a full-time nurse in CMC's Psychiatric Unit. (Krutulis Depo. at 60). On June 20, 2005, a patient admitted to the Psychiatric Unit died while in restraints. (Compl. ¶ 8).

According to Plaintiff, subsequent the patient's death in June of 2005, CMC's Director of Nursing asked Plaintiff and other Psychiatric Unit nurses whether they had received training regarding the proper care of patients in restraints. After Plaintiff and the other nurses responded that they had not received training, the Director of Nursing produced a document that purported to be the signatures of all the Psychiatric Unit nurses as evidence that training had, in fact, been received. Plaintiff alleges that upon

---

Opposition to Summary Judgment on June 27, 2014 and, on March 23, 2015, the parties ultimately informed the Court that the matter would be submitted solely on the briefs without oral argument for decision.

reviewing the document, she stated that her purported signature had been forged and, after discussion with the other nursing staff members, that Plaintiff believed all of the signatures on the training document were forged. (Krutulis Depo. at 83-90).

Also subsequent to the patient's death, Plaintiff alleges that the *Scranton Times* newspaper ran an article which reported the death and portrayed CMC and the Psychiatric Unit nurses in a negative light. (Compl. ¶ 15). Plaintiff states that the nurses asked CMC's management to inform the *Scranton Times* about the "bad reporting and the forged documents." *Id.* Plaintiff alleges that CMC did not act on this request, so Plaintiff herself called the *Scranton Times* and spoke to a reporter "concerning the corruption." (*Id.* at ¶ 16).

In March of 2006, nine months after the patient's death, Plaintiff voluntarily resigned from her employment at CMC to accept a nursing position at Lackawanna County Long Term Care Center. (Compl. ¶ 18). However, soon thereafter in May of 2006, Plaintiff returned to work at CMC as the Admission and Discharge RN in the Psychiatric Unit. (*Id.* at ¶ 19; Krutulis Depo. at 63). This new position was substantially similar to Krutulis' previous position at CMC since it was also a full time nursing position in the Psychiatric Unit, the same unit in which Krutulis had previously worked. Plaintiff alleges that she was asked by CMC to return to work for them, taking this new job where Plaintiff would not have any weekend, holiday, or flexible hours. Based on these promises, Plaintiff "returned thus leaving a secure position and giving substantial consideration for the new position." (Compl. ¶ 19).

In February of 2007, Plaintiff alleges that she was asked to return to her old position in the Psychiatric Unit and that, after she declined, her employment was adversely affected. Plaintiff states that she was required to begin working on weekends and that her Monday through Friday work shifts were changed without notice from "9:30 to 6:00 to 7:00 to 3:00." (*Id.* at ¶¶ 20-24). Plaintiff's employment was later terminated on March 15, 2007.

Plaintiff's Complaint advances a single count of "Wrongful Discharge," but advances two theories of recovery: (1) that Plaintiff's termination in 2007 violates public policy, and (2) that Plaintiff provided Defendant CMC with "substantial consideration" when she returned to work at CMC in May of 2006 (presumably arguing that Plaintiff's employment was no longer terminable at-will).

Defendant argues in its Motion for Summary Judgment that Plaintiff was not terminated in violation of public policy and that Plaintiff is an at-will employee because she did not give "substantial consideration" to return to work for CMC.

## III. ISSUES

A. WHETHER A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER PLAINTIFF WAS ALLEGEDLY TERMINATED IN VIOLATION OF PUBLIC POLICY.

B. WHETHER A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER PLAINTIFF'S EMPLOYMENT WAS TERMINABLE AT-WILL.

## IV. STANDARD OF REVIEW

According to Pa. R.Civ.P. 1035.2, after the pleadings are closed, any party may move for summary judgment when (1) there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if after the completion of discovery, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

Summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. The record will be viewed in a light most favorable to the non-moving party, and any doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *McDonald v. Whitewater Challengers, Inc.*, --- A.3d ----, 2015 WL 1955379 (Pa. Super. 2015). Determinations of credibility are for the fact finder. *Janis v. AMP, Inc.*, 856 A.2d 140 (Pa. Super. 2004).

## V. DISCUSSION

"Pennsylvania law holds that employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason." *Guerra v. Redevelopment Authority of City of Philadelphia*, 27 A.3d 1284, 1289 (Pa. Super. 2011) *citing Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996). As a general rule, no common law cause

of action exists against an employer for termination of an at-will employment relationship. "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Janis v. AMP, Inc.*, 856 A.2d 140, 144 (Pa. Super. 2004) *citing Rapagnani v. The Judas Company*, 736 A.2d 666, 669 (Pa. Super. 1999).

A. WHETHER A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER PLAINTIFF WAS ALLEGEDLY TERMINATED IN VIOLATION OF PUBLIC POLICY.

Plaintiff alleges that her employment was terminated in violation of public policy in two respects. First, Plaintiff argues that she "had complained to management about the forged document which was an effort to hide the cause of the patient's death and refused to participate in an illegal act." (Compl. ¶ 31). Second, Plaintiff "called the *Scranton Times* Reporter to advise him of the illegal and improper actions that had taken place thus performing an important public act and exercising a Constitutional Right under the First Amendment." (*Id.* at ¶32).

Conversely, Defendant argues in its Motion for Summary Judgment that Plaintiff was not terminated in violation of public policy because Plaintiff has not provided any evidence to support her contention that she was fired in relation to either the alleged forged training document or the telephone call to the *Scranton Times* reporter.

1. No genuine issue of material fact exists because Plaintiff has failed to provide evidence that her termination was related to her statements regarding the 2005 patient death.

As an initial matter, we find that Plaintiff has not provided any evidence that her termination in March of 2007 was related to Plaintiff's statements made in the summer of 2005, nearly two years earlier. *In so finding, it is important to remember that Plaintiff voluntarily resigned from her position in March of 2006, over 9 months after the patient's death occurred, and then was rehired by Defendant CMC again in May 2006.*

First, Plaintiff has not provided any evidence to show that she was terminated due to the statements she made about the training documents allegedly being forged by Defendant CMC. Plaintiff testified in her deposition that the conversation with the Director of Nursing over the alleged forged training document occurred a "few weeks" after the patient's death. (Krutulis Depo. at 84, 86). To the best of Plaintiff's knowledge, there were no further discussions on this topic and no other management employee ever spoke with Plaintiff regarding the document again. (*Id.* at 92). Other than the initial conversation Plaintiff had with the Director of Nursing in the summer of 2005, there is no evidence of any other related activity occurring concerning these statements until the time that Plaintiff voluntarily resigned her position in March 2006.

Furthermore, Plaintiff has not provided any evidence to show that she was terminated due to the telephone call she made to the *Scranton Times* reporter because she has not shown that Defendant CMC was even aware that she

had made the call. Between the time of the patient's death in June of 2005 and Plaintiff's resignation in March of 2006, CMC administrators held meetings with the nurses in the Psychiatric Unit in which the nurses expressed their displeasure with the newspaper articles surrounding the patient death in which the nurses were negatively depicted. (*Id.* at 122, 93). However, Plaintiff testified that she did not recall personally raising any concern with any member of Defendant CMC's management, either in staff meetings or individually, regarding the accuracy of the newspaper articles. (*Id.* at 113-114). Plaintiff testified that she conducted the telephone call to the *Scranton Times* reporter in the presence of two other Psychiatric Unit nurses and told the reporter that the nurses were not being "adequately represented" in the articles pertaining to the patient death. (*Id.* at 115-16). Subsequently, Plaintiff and the other two nurses decided that "it wasn't worth it" to pursue the matter further and no additional communication with the reporter occurred. (*Id.* at 117).

However, Plaintiff testified that she never informed any managerial employee of Defendant CMC that the telephone call to the *Scranton Times* occurred and that she has no knowledge that either of the other two nurses who were present made any managerial employee aware of the call. *Id.* Furthermore, Plaintiff testified that she had no knowledge that any managerial member of Defendant CMC even knew that the phone call occurred. (*Id.* at 121). Plaintiff did not recall the specific date on which the telephone call took place but stated that it occurred during the summer of 2005.

As the above statements illustrate, Plaintiff has failed

to provide any evidence that Defendant CMC had any knowledge whatsoever about the telephone call to the *Scranton Times* reporter. Additionally, though Plaintiff claims that she made statements to the Director of Nursing about the alleged forged training documents, she has not provided any evidence of any adverse employment action between the time the statements were made in the summer of 2005 and the time of her voluntary resignation in March of 2006.

2. No genuine issue of material fact exists because Plaintiff has failed to provide evidence that her termination constituted a violation of public policy.

Even though this Court has already found that Plaintiff has not provided any evidence that her termination in March of 2007 was related to Plaintiff's statements made in the summer of 2005, We further find that Plaintiff's statements are not protected under the public policy exception. Plaintiff has failed to meet any of the recognized exceptions to merit such protection.

An employee may bring a cause of action for a termination of an at-will employment relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy. *Mikhail v. Pennsylvania Organization for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013) citing *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). "An employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when [specifically] prohibited from doing so by statute." *Id.* at 317, *citing Donahue v. Federal Exp. Corp.*, 753 A.2d 238, 244 (Pa. Super. 2000).

The power of the courts to declare pronouncements of public policy is sharply restricted. Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. Only in the clearest of cases may a court make public policy the basis of its decision. *Mikhail*, 63 A.23 at 316-317, citing *Weaver*, 975 A.2d at 563.

Applying this standard, Pennsylvania courts have found actionable exceptions where the employee was terminated for filing a claim for worker's compensation benefits, *Shick v. Shirey*, 116 A.2d 1231 (Pa. 1998); for filing a claim for unemployment benefits, *Highhouse v. Avery Transportation*, 660 A.2d 1374 (Pa. Super. 1995); for failing to submit to a polygraph test where a statute prohibited employers from so requiring, *Kroen v. Bedway Security Agency, Inc.*, 633 A.2d 628 (Pa. Super. 1993); for complying with a statutory duty to report violations to the Nuclear Regulatory Commission, *Field v. Philadelphia Electric Co.*, 565 A.2d 1170 (Pa. Super. 1989); and for serving jury duty, *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1978).

However, courts have found that no public policy exception exists where the employee was terminated as a result of sexual discrimination by an employer not covered by the Pennsylvania Human Relations Act, *Weaver, supra*; for complaining about violations of the Occupational Safety and Health Act, *McLaughlin v. Gastrointestinal Specialists,*

*Inc.*, 750 A.2d 283 (Pa. 2000); for expressing concerns that the employer's product was unsafe, *Geary v. U.S. Steel Corporation*, 319 A.2d 174 (Pa. 1974); for disengaging an illegal surveillance system, *Hineline v. Stroudsburg Electric Supply Co.*, 559 A.2d 566 (Pa. Super. 1989), *app. denied* 514 A.2d 70 (Pa. 1989); or for complaining about the waste of taxpayer money, *Rossi v. Pennsylvania State University*, 489 A.2d 828 (Pa. Super. 1985).

Furthermore, where a cause of action "involves a violation of public policy for which a remedy already exists by statute," Pennsylvania courts have held that "a common law cause of action will not be recognized." *Ade v. KidsPeace Corp.*, 698 F.Supp.2d 501, 521 (E.D.Pa. 2010). In the instant case, Plaintiff Krutulis' claim is also statutorily preempted by the Medical Care Availability and Reduction of Errors Act ("MCARE"), 40 P.S. § 1303.101, *et seq.* MCARE Section 1303.308, entitled "Reporting and notification," states as follows:

> (c) Liability. — A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) or (b) shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

40 P.S. § 1303.308(c). Since Plaintiff's Complaint only raised a common law claim of wrongful termination and since Plaintiff never pursued any potentially available statutory remedies, the statute of limitations would have already expired on any potential statutory claim Plaintiff may or may not have had.

Finally, Plaintiff's claim that her statements are protected under the First Amendment of the United States Constitution does not constitute a recognized public policy exception. Pennsylvania Courts have declined to look to the First Amendment as a source of public policy when there is no state action involved. *Fraser v. Nationwide Mut. Ins. Co*, 352 F.3d 107, 112-113 (3d Cir. 2003); *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 844 (Pa. Super. 1986); *Cisco v. United parcel Servs., Inc.*, 476 A.2d 1340 (Pa. Super. 1984); *Borse v. Pierce Goods Shop, Inc.*, 963 F.2d 611, 619 (3d Cir. 1992).

Accordingly, we find that Plaintiff's termination does not meet any of the exceptions to qualify for the public policy exception to termination of an at-will employment relationship and that no genuine issue of material fact exists on this issue.

B. WHETHER A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER PLAINTIFF'S EMPLOYMENT WAS TERMINABLE AT-WILL.

Plaintiff also argues that she was not an at-will employee and that her termination was improper. After voluntarily resigning her employment with CMC in March of 2006, Plaintiff returned to work at CMC in May of 2006 as the Admission and Discharge RN in the Psychiatric Unit. Plaintiff alleges that she was asked by CMC to return to work for them, taking this new job where Plaintiff would not have any weekend, holiday, or flexible hours. Based on these promises, Plaintiff left her job at Lackawanna County Long Term Care Center and "returned thus leaving a secure position and giving substantial consideration for the new position." (Compl. ¶¶ 19, 33-34).

Conversely, Defendant argues in its Motion for Summary Judgment that Plaintiff was an at-will employee because she did not give "substantial consideration" to return to work for CMC. Defendant CMC argues that Plaintiff Krutulis acknowledged that she left her employment with the Lackawanna County Long Term Care Center because she was dissatisfied with the type of work required by that employment. Plaintiff Krutulis indicated that working at the Lackawanna County Long Term Care Center was "very convenient" for her and resulted in a decreased commute to work as compared to her commute to work at CMC. (Krutulis Depo. at 65). Furthermore, her work at the Lackawanna County Long Term Care Center provided her with comparable compensation to her earnings at CMC, the opportunity to receive "better" benefits than those received at CMC, and the opportunity to work a better shift. (*Id.* at 66-68). However, approximately four to five weeks into her employment at the Lackawanna County Long Term Care Center, *Plaintiff Krutulis realized that she did not enjoy long-term care nursing and therefore determined that she did not wish to continue her employment there. (Id.* at 69, 72-73)(emphasis added). As Krutulis was still in touch with her former colleagues at CMC, she eventually returned to work at CMC. *Id.*

The burden of overcoming the presumption of at-will employment "rests squarely" upon the employee. *Lewis v. Gettysburg Diagnostic Imaging, P.C.*, 2004 WL 2252832, 67 Pa. D. & C. 4th 148, 155 (C.P. Adams Co. 2004) *citing Rutherfoord v. Presbyterian-University Hospital*, 612 A.2d 500, 503 (Pa. 1992). An employee can defeat an at-will presumption by establishing that the employee gave his employer "additional consideration"

other than the services for which he was hired. *Ciardi v. Laurel Media Inc.*, 2012 WL 70656 (W.D.Pa. 2012); *Janis v. AMP, Inc.*, 856 A.2d 140, 144 (Pa. Super. 2004). A definition of what constitutes sufficient additional consideration was set forth in *Darlington v. General Electric*, 504 A.2d 306, 315 (Pa. Super. 1986), when the court explained as follows:

> Thus, a court will find "additional consideration" when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. If the circumstances are such that a termination of the relation by one party will result in a great hardship or loss to the other, as they must have known it would when they made the contract, this is a fact of great weight in inducing a holding that the parties agreed upon a special period.' (citing 3 A. Corbin, *Corbin on Contracts* §684 (1960)).

*Lewis*, 67 Pa. D. & C.4th at 157-158 *citing Darlington*. "A court may rule on the issue of whether or not additional consideration is present when that issue 'is so clear that no reasonable [person] would determine the issue before the court in any way but one.'" *Darlington, supra.*

One factor useful in determining whether additional consideration was present is to inquire whether "a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract." *Darlington, supra.* The primary factor upon which the courts tend to focus is relocation, particularly relocation of a family. *Gentzler*

*v. Graham Packaging Co., L.P.*, 2014 WL 6682452 (Pa. Super. 2014) *citing Donahue v. Fed. Express Corp.*, 753 A.2d 238, 245 (Pa. Super. 2000). For example, an employee who, upon imploring by his employer, sold his house and moved his pregnant wife and young child from Virginia to Pittsburgh and was fired only sixteen days after the move had granted the employer sufficient additional consideration. *Ciardi*, 2012 WL 70656 at *4-5 *citing Cashdollar v. Mercy Hosp.*, 595 A.2d 70, 72 (Pa. Super. 1991).

However, courts have found insufficient additional consideration where an employee has suffered detriments, in the course of his or her employment, that are "commensurate with those incurred by all manner of salaried professionals." *Ciardi*, 2012 WL 70656 at *5. As the *Ciardi* court summarized:

> For example, in *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986), the state appellate court upheld the trial court's determination that there was insufficient evidence to overcome the employment at-will presumption where the plaintiff was fired after eight years even though the employee had given up a job with a newspaper and moved his family from New Jersey to Pennsylvania, and had throughout the years refused other employment opportunities); *Quint v. Thar Process, Inc.*, 2011 WL 4345925, *9 (W.D.Pa. Sept 15, 2011) (J. Standish) (court granted motion to dismiss claim of employee who was terminated after working for eleven months where employee had commuted between Michigan and Pennsylvania for first six months of employment but did so as part of the

parties' original agreement and seemingly had received compensation for these travel expenses, employee had listed his house in Michigan for sale but had not sold it, and his wife had relocated her employment to Pittsburgh); *Pinderski v. Commonwealth Telephone Enterprises. Inc.*, 2006 WL 2085996 (E.D.Pa. July 25, 2006) (court granted motion to dismiss plaintiff's breach of contract claim on the basis that the employee, who had been terminated less than one month after he began employment with defendant employer, had not alleged "sufficient additional consideration;" plaintiff had alleged that at the time defendant offered him the job, he resided in Illinois with his wife and children, that in order to accept the job, plaintiff and his family would have had to eventually move to Pennsylvania and he had incurred expenses in preparing to move to Pennsylvania, and that when plaintiff accepted the job offer, his wife resigned from a well-paying job); *Shaffer v. BNP/Cooper Neff Inc.*, 1998 WL 575135, *7 (E.D.Pa. Sept.4, 1998) (court granted motion for summary judgment where employee was terminated approximately six months after transferring to Singapore where transfer had originally been employee's idea, he neither sold a house or relocated family, and the transfer provided employee with additional significant benefits); *Shriver v. Cichelli*, 1992 WL 350226, *5-6 (E.D.Pa. November 19, 1992) (court granted summary judgment on breach of implied contract claim where plaintiff, who was terminated after being employed for four months, had been unemployed prior to accepting the position and relocating from New Hampshire to Pennsylvania, was willing to relocate, did not have

to sell his home or move children and family, and the relocation was not related to a demand by a then current employer).

*Ciardi*, 2012 WL 70656 at *6.

As the record indicates, Plaintiff Krutulis chose to voluntarily leave her employment at CMC and commence work at Lackawanna County Long Term Care Center for reasons of personal and work preferences. However, approximately four to five weeks into her employment at the Lackawanna County Long Term Care Center, Plaintiff Krutulis realized that she did not enjoy long-term care nursing and therefore determined that she did not wish to continue her employment there and CMC rehired her. She then voluntarily returned to CMC for the opportunity to resume the work she preferred. Plaintiff did not have to relocate, sell her home, or undergo any specific hardships whatsoever when she voluntarily left her job at the Lackawanna County Long Term Care Center. Instead, the evidence demonstrates that she left the Lackawanna County Long Term Care Center of her own choice based on her specific preference to return to a different type of nursing work.

As a result, we find that no reasonable person would find that Plaintiff Krutulis provided Defendant CMC with any additional consideration when she returned to work for CMC in May of 2006 since her earlier pre-2005 nursing position and her later 2006 nursing position upon being re-hired were substantially similar, both providing nursing services in the psychiatric unit. Accordingly, Plaintiff's employment was terminable at-will and there is no genuine issue of material fact regarding this issue.

Since the Court finds Plaintiff has failed to meet the two needed prerequisites required to file suit, there exists no need to analyze the disputed facts constituting the ostensible reasons for her discharge from CMC. Plaintiff never established the public policy exceptions or the additional substantial consideration exceptions that are essential to overcoming her status as an at-will employee. Finally, this Plaintiff is found to be an at-will employee dischargeable at any time for any reason or for no reason. *Guerra*, 27 A.3d at 1289.

An appropriate Order follows.

## ORDER

AND NOW this 4th day of June 2015, upon consideration of Defendant's Motion for Summary Judgment, briefs in support of and in opposition thereto, it is HEREBY ORDERED AND DECREED that Defendant's Motion for Summary Judgment is HEREBY GRANTED and Plaintiff's Complaint is HEREBY DISMISSED with prejudice.